[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 6, 2002
THOMAS K. KAHN
CLERK

No. 01-14827
Non-Argument Calendar

D. C. Docket No. 01-00214-CV-2-HL-5

CHARLES D. WILSON, SR.,

Plaintiff-Appellant,

versus

GEORGE SARGENT, Chief Counselor,
Scott State Prison,
MARRINNE REYNOLDS, Counselor,
Scott State Prison,
MARLA BLACKMON, Parole Hearing Examiner,
Georgia State Board of Pardons and Paroles,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

**(December 6, 2002)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Charles Wilson, a Georgia state prisoner, appeals pro se the dismissal of his § 1983 action for failure to pay an initial partial filing fee of $7.16 as ordered by the district court. We conclude that before dismissing the complaint, the court was required to ascertain whether Wilson had attempted to comply with the fee order by requesting or authorizing prison officials to withdraw the partial filing fee from his prison trust fund account. Because the court did not do so, but merely dismissed the case sua sponte, we vacate the dismissal and remand this case for that inquiry.

## I. Factual Background

Wilson filed his complaint on May 31, 2001. Along with the complaint, Wilson filed a completed "Application to Proceed Without Prepayment of Fees," a form application provided by the Clerk's Office of the United States District Court for the Middle District of Georgia to all prisoners seeking in forma pauperis ("IFP") status. This Application includes a sworn statement by the prisoner listing all the prisoner's assets and income and averring, inter alia, that the prisoner "is unable to pay such fees or give security therefor." See 28 U.S.C. § 1915(a)(1). In addition, the Application includes a printed acknowledgment that fees and costs will be collected from the applicant's prison trust account in installments.[1] The

---

[1] "I make this application with the understanding that I am liable under 28 U.S.C. § 1915 for the full payment of all fees and costs imposed in this action, that

2

IFP Application also includes a "Certification" section, to be completed at the prisoner's custodial institution, stating the average monthly balance of the prisoner's account for the past twelve months and listing any other securities the prisoner has at the institution. The Certification section requires that a statement of the prisoner's inmate account for the past twelve months be attached. See id. § 1915(a)(2).

Wilson completed and filed this Application, with the Certification section already completed by Wilson's custodial institution and his inmate trust fund account statement attached thereto. In his sworn Application, Wilson stated that his only source of money over the last twelve months was his family, which sent him "about fifty dollars a month." The Certification section completed by Wilson's custodial institution on May 10, 2001 indicates that Wilson's average account balance over the preceding twelve months had been $10.85 and that he had a $10.00 contingency. Wilson's attached inmate trust fund account statement, dated May 9, 2001, includes transactions up to April 16, 2001, and shows that Wilson had received six deposits in the six months leading up to the filing of his

such charges will be collected from my prison trust account in installments, and that any unpaid fees and costs will constitute a debt not dischargeable in bankruptcy."

3

complaint, totaling $215.00, and that the account had an ending balance of 24 cents.

On May 31, 2001, the district court referred Wilson's Application to proceed IFP to a magistrate judge. On June 11, 2001, the magistrate judge entered an order granting Wilson's motion to proceed IFP and directing him to pay an initial partial filing fee of $7.16 within thirty days of receipt of the order. The magistrate judge's order explained that the fee assessment was "[b]ased upon the information provided by plaintiff and after consideration of the trust fund account statement from the facility wherein he is incarcerated." The order warned Wilson that failure to comply with this order would result in dismissal of his complaint.

Approximately six weeks later, on July 30, 2001, the district court sua sponte entered an order dismissing Wilson's complaint because he had not paid the initial partial filing fee as ordered by the court. On August 6, 2001, Wilson filed a motion for reconsideration, arguing that as an indigent inmate, he was entitled to "disregard filing fees" and to move forward. He further argued that § 1915(b)(4) prohibits the dismissal of his complaint if he cannot pay the initial partial filing fee and requires that the partial filing fee should be collected only "when funds exist." The district court summarily denied the motion for reconsideration. Wilson timely appealed.

## II.  Discussion

This appeal involves the Prisoner Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), passed by Congress "[i]n an effort to stem the flood of prisoner lawsuits in federal court," Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc).  To further that effort, the PLRA amended portions of 28 U.S.C. § 1915 to require the payment of filing fees by prisoners proceeding in forma pauperis in the district court.  Id.  The four issues raised by Wilson relate to those amended provisions.  First, we consider de novo the legal issue of whether the PLRA requires all inmates, even indigent ones, to pay filing fees.  See Troville v. Venz, 303 F.3d 1256, 1259 (11th Cir. 2002).  Second, we review the district court's calculation of the initial partial filing fee for abuse of discretion.  See Sellers v. United States, 881 F.2d 1061, 1063 (11th Cir. 1989).  Third, we consider de novo whether the PLRA requires payments of fees only when funds exist.  See Troville, 303 F.3d at 1259.  Finally, we review for abuse of discretion the district court's dismissal of Wilson's complaint for failure to comply with its IFP order.  See Connolly v. Papachristid Shipping Ltd., 504 F.2d 917, 920

(5th Cir. 1974)[2]; see also Wouters v. Martin County, 9 F.3d 924, 929 (11th Cir. 1993), cert. denied, 513 U.S. 812 (1994).

**A. Assessment of filing fees against indigent inmates**

Before enactment of the PLRA in 1996, the decision whether or not to assess a filing fee against a prisoner proceeding IFP under § 1915 was left to the discretion of the district court. See Collier v. Tatum, 722 F.2d 653, 655 (11th Cir. 1983). The PLRA, however, "clearly and unambiguously requires that 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" Hubbard v. Haley, 262 F.3d 1194, 1197 (11th Cir. 2001) (quoting 28 U.S.C. § 1915(b)(1)), cert. denied, 534 U.S. 1136 (2002). Nevertheless, the PLRA provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). Accordingly, the impecunious defendant, although liable for the entire fee, may pay his or her entire fee in installments. Id. § 1915(3)(b)(1); see McGore v. Wrigglesworth, 114 F.3d 601, 606 (6th Cir. 1997) (observing that "the only issue [in IFP fee determination]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions handed down by the Former Fifth Circuit prior to the close of business on September 30, 1981.

is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan"); see also Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1999). Thus, in the case before us the district court properly assessed Wilson an initial filing fee.

## B. Assessment and calculation of initial filing fee

To enable the district court to assess an appropriate initial filing fee, § 1915 as amended by the PLRA requires that prisoners submit with their IFP application "an affidavit that includes a statement of all assets such prisoner possesses" and "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." Id. § 1915(a)(1), (2).[3] After the prisoner

---

[3] These subsections, which relate to the application process, provide in full as follows:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1),

7

files a completed IFP application, the district court "shall assess and, when funds exist, collect" an initial partial filing fee equivalent to "20 percent of the greater of . . . the average monthly deposits . . . or the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." Id. § 1915(b)(1)(A), (B).[4] If the IFP Application and attachments show that the inmate's trust account contained no funds for the six-month period immediately preceding the filing of the complaint, the inmate is assessed an initial

shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(1)(2).

[4] This subsection, which governs assessment of the initial partial filing fee, provides in full as follows:

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of–
    (A) the average monthly deposits to the prisoner's account; or
    (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1).

partial filing fee of $0.00 and ordered to pay the full filing fee in installments. See id. § 1915(b)(2); Hatchet v. Nettles, 201 F.3d 651, 653 (5th Cir. 2000).

In the present case, Wilson swore in his IFP Application that his family sends him approximately $50 a month. This statement is borne out by his prison trust fund account statement showing that during the six months preceding filing the action he received $215.00 in deposits.[5] Thus, the average monthly deposits to the account for that period equaled $35.83, an amount greater than the average monthly balance. Pursuant to § 1915(b)(1), the district court therefore was required to assess Wilson an initial fee equal to 20 percent of his $35.83 average monthly deposits, or $7.16. Thus, the court correctly calculated Wilson's initial partial filing fee to be $7.16.

## C. Collection of initial filing fee and remainder

Once the district court assesses an initial partial filing fee, the inmate is liable for its payment. See § 1915(b)(1). If the prisoner's account does not contain the full amount assessed as an initial partial filing fee, the inmate must ensure that

---

[5] Wilson's prison statement was current only up to April 16, 2001. In the absence of a more current statement, the court properly assumed that Wilson received no additional deposits from that date until the date he filed his complaint: May 31, 2001. Another solution to the problem of rapidly fluctuating inmate accounts and the resulting difficulty in ascertaining the inmate's current financial condition, is for the district court to order the custodial institution to calculate the amounts under § 1915(b)(1)'s formula and send the requisite initial amount. See McGore, 114 F.3d at 607.

any available portion of that initial fee is withdrawn from his account and transmitted to the clerk of the district court. See Hatchet, 201 F.3d at 653. Once the entire initial partial filing fee is paid pursuant to § 1915(b)(1), the PLRA requires that the prisoner make monthly payments equivalent to 20 percent of the preceding month's income credited to his or her account each time the balance exceeds $10, until the entire remainder of the filing fee is paid. Id. § 1915(b)(2).[6]

Wilson argues that he is excused from payment of his initial partial filing fee of $7.16 because he lacks funds. According to § 1915(b)(1), the prisoner must pay the initial fee "when funds become available." Even if the account contains less than $10, the inmate must pay to the clerk of the district court any and all existing funds up to and including the amount of the initial partial filing fee; the ten-dollar rule of § 1915(b)(2) applies only after the initial partial filing fee is paid. See Hatchet, 201 F.3d at 653. Once ordered to pay the $7.16, Wilson therefore

---

[6] This subsection, which governs payment of the remainder of the initial partial filing fee, provides in full as follows:

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2).

was required to pay that amount as soon as funds became available.  For example, if he had $7.16 in his account, he was required to pay the entire amount.  If he had $5.00, he was required to pay $5.00, and to withdraw and pay funds from any subsequent deposits into his account up to and including $2.16.  See id.; McGore, 114 F.3d at 606.  Thus, Wilson would be excused from making payments on his initial partial filing fee only if his account balance was $0.00 and no further deposits were made to his account.  After paying the entire initial partial fee, Wilson would be required to pay the entire $142.84 remainder of his filing fee ($150.00 total fee minus $7.16 initial partial fee), by making payments equal to 20 percent of the preceding month's income credited to his account each time the balance exceeded $10.00.  See 28 U.S.C. § 1915(b)(2); see also Hatchet, 201 F.3d at 653; McGore, 114 F.3d at 606.

## D.  Inquiry before dismissal

While the district court properly ordered Wilson to pay an appropriate initial partial filing fee, we conclude that the court abused its discretion in dismissing sua sponte the complaint without making any inquiry into why the fee had not been paid as ordered.  We recognize that an imprisoned plaintiff cannot pay his fee simply by writing and mailing a check to the clerk of court.  Rather, the prisoner must authorize prison officials to withdraw and pay funds from his or her account;

11

the account must contain the required funds; and prison officials must timely process the withdrawals and payments. Thus, a prisoner's failure to pay his filing fee may be caused by circumstances beyond his control, in which case his complaint should not be dismissed.

This Court has not yet determined what type of inquiry a district court must make before dismissing a prisoner's complaint for failure to comply with an IFP order directing the prisoner to pay an initial filing fee. The Fifth Circuit, however, addressed this issue in Hatchet v. Nettles, 201 F.3d 651 (5th Cir. 2000), and its approach is instructive. In that case, the district court dismissed a prisoner's complaint when he failed to pay an initial partial filing fee as ordered. On appeal, the prisoner claimed he could not pay the partial fee because he had a balance of only 20 cents. Id. at 652. In reversing the dismissal as an abuse of discretion, the Fifth Circuit recognized the difficulty a prisoner can face in making a fee payment. Even after a prisoner has authorized the custodial institution to withdraw funds and send them to the district court, the prisoner necessarily depends upon the custodial institution to make timely withdrawals and payments. See id. at 652-53.

The Fifth Circuit concluded in Hatchet that once the prisoner fails to pay the court-ordered initial partial filing fee, the district court must take reasonable steps to determine whether the prisoner complied with the order by authorizing payment

12

by prison officials. Id. at 654. These steps may include issuing a show-cause order, allowing objections to the magistrate's report, communicating by telephone, fax, or email with officials of the custodial institution, and issuing an order to the custodial institution. See id. According to the Fifth Circuit, a prisoner's response containing copies of any relevant consent forms or an affidavit detailing the prisoner's compliance "ordinarily will be sufficient to avoid dismissal for failure to comply with an initial partial filing fee order." Id.

We agree with the Fifth Circuit and hold that before dismissing a prisoner's complaint for failure to comply with an IFP order directing the prisoner to pay an initial partial filing fee pursuant to 28 U.S.C. § 1915, the district court must take reasonable steps, such as those outlined by the Fifth Circuit, to determine whether the prisoner complied with the order by authorizing payment by prison officials. See Hatchet, 201 F.3d at 654. Should the district court choose to communicate directly with the custodial institution regarding the inmate's authorization of payment, and receive information that any non-payment was the inmate's fault, the court must give the inmate a reasonable opportunity to respond to this information, through, for example, a show-cause order or the opportunity to make objections to a magistrate's report.

When the district court determines that the prisoner did execute a consent form or otherwise authorized the prison officials to remit his or her fee when the funds became available, the complaint ordinarily should not be dismissed for nonpayment of the filing fee. Id. In so holding, we recognize that proof of authorization of payment ordinarily confirms that the failure to pay was not the fault of the prisoner, but rather the result of inaction by prison officials or a lack of funds in the account.[7] Any inquiry into the prisoner's efforts to comply with a fee order, and any response thereto, should be made a part of the record to allow this court to review any subsequent dismissal.

### E. Simplified collection procedure

In order to simplify the procedures relating to the filing fees, some district courts in this Circuit have incorporated into their IFP applications a preprinted consent form that authorizes the custodial institution to withdraw funds from the

---

[7] Nothing herein, however, precludes a court from inquiring further into the inmate's account activity after entry of the IFP order. For example, if the court determines that Wilson is unable to pay the partial filing fee at the time of collection because he intentionally depleted his account to avoid payment, the court in its sound discretion may dismiss the action. See Collier v. Tatum, 722 F.2d 653, 655-56 (11th Cir. 1983). Before reaching such a conclusion, however, "the prisoner should be given some reasonable opportunity, after appropriate notice, to explain and refute any finding to that effect . . . ." Id. at 656 (quotation omitted).

inmate's trust fund account and transmit them to the district court to be applied to the filing fee. One court's authorization form provides as follows:

AUTHORIZATION FOR ACCOUNT WITHDRAWAL

I hereby authorize my custodian and his/her designee to withdraw funds from my inmate account and to transmit the same to the Clerk, United States District Court to be applied to the filing fee which I am required to pay in connection with this case. This authorization shall apply to any institution in which I am or may be confined.

Executed this ____ day of _____, 20__.

_____
Signature of Plaintiff/Petitioner

On the basis of such an authorization, a district court, in its order granting IFP status and assessing the amount of the initial partial filing fee, may direct the custodial institution to collect the initial partial filing fee and future installments from the inmate's account pursuant to § 1915(b)(2) and remit these payments to the Clerk of the District Court until the filing fee is paid in full. For example, the Sixth Circuit has suggested that its district courts direct custodial institutions to collect inmate payments by including in their IFP orders language similar to the following:

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of [prisoner's name]'s inmate trust account at the institution where [he or she] resides is directed to submit to the Clerk of the United States District Court for the [. . . Northern, Southern, Middle] District of [State], as an initial partial payment, twenty percent (20%) of the greater of *either* the average monthly deposits to the inmate trust account *or* the

15

average monthly balance in the inmate trust account, for the six (6) months immediately preceding the filing of [the complaint or notice of appeal] on [date].
After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of [prisoner's name]'s preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full fees of one hundred and fifty dollars ($150) have been paid to the clerk of this court. 28 U.S.C. § 1915(b)(2).

McGore, 114 F.3d at 606 (emphasis in original); see also Hatchet, 201 F.3d at 653.

When a consent form is included in the IFP Application, it simplifies the process for the prisoner because such an application contains all that is required of the prisoner for payments to be made toward the filing fee: an affidavit reflecting the prisoner's assets and income, a certified copy of his or her account statement, and a consent for withdrawals from the trust fund account. Once the prisoner authorizes withdrawals and payments from his or her account and the district court orders the custodial institution to do so pursuant to § 1915(b), he or she ordinarily would not be required to take any other action to comply with the IFP order requiring payment. For this reason, the district court's inquiry into the prisoner's compliance with the IFP order before dismissal also is simplified because the court can simply review the IFP Application itself to confirm that the prisoner had authorized withdrawal and payment of the initial partial filing fee.[8]

---

[8]A district court may, of course, choose not to include in the IFP Application a form authorizing prison officials to withdraw and make payments from the

16

## III. Conclusion

Because the district court acted <u>sua sponte</u> and did not inquire into whether Wilson had complied with the district court's order by requesting or authorizing prison officials to withdraw the partial filing fee from his prison trust fund account, we vacate the district court's dismissal and remand this action for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

---

inmate's account, thereby placing the burden on the inmate to submit a separate consent or authorization form to the custodial institution for withdrawals in order to initiate the payment process.  In those cases, the district court, before dismissing the complaint for the inmate's failure to pay a filing fee, must still take reasonable steps as outlined above to determine whether the prisoner has complied with the court's order and whether the failure to pay was caused by the prisoner and not by the prison officials or a lack of funds in the account.