**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

GREGORY D. COSMO COSBY,

Plaintiff-Appellant,

v.

N.R. MEADORS, Associate Warden
Custody (USP); B. VALLE, Sen.
Officer; RICK NUCI, Sen. Officer;
DONALD DURNING;
BUTCH FAORO; MARIO PILUSO,

Defendants-Appellees.

No. 02-1540

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. No. 00-RB-267 (OES))

---

Submitted on the briefs:    *

Gregory D. Cosmo Cosby, pro se.

R. Joseph Sher, Senior Trial Counsel, Constitutional Torts Staff, Paul Michael
Brown, Senior Trial Attorney, Constitutional Torts Staff, Torts Branch, Civil
Division, Washington, D.C., for Defendants-Appellees.

---

\*    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

John R. Mann of Kennedy & Christopher, P.C., Denver, Colorado, for Defendant-Appellee Ronald Nuci.

---

Before **TACHA** , Chief Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

---

**HARTZ** , Circuit Judge.

---

Plaintiff Gregory D. Cosmo Cosby, a federal inmate appearing *pro se* , appeals the dismissal of his federal civil rights complaint for failure to comply with the district court's orders requiring him to make monthly partial payments of his filing fee or to show cause why he could not make the payments. We review for abuse of discretion a district court's dismissal for failure to comply with a court order. *See Mobley v. McCormick*, 40 F.3d 337, 340, 341 (10th Cir. 1994). Because we conclude that the district court did not abuse its discretion, we affirm.

The issue here is not money per se. The amounts at stake, as will become apparent as we recount the factual background, might not seem significant to some outside prison walls. The issue, rather, is respect for the judicial process and the law. Plaintiff must lose his right to pursue his claim in court because of his utter unwillingness to make the minor sacrifices required by statute and by the repeated directives of a patient district court. In disposing of this appeal, we have

occasion to set forth the duties of indigent prisoners with respect to the payment of filing fees.

## I. PAYMENT OF FILING FEES BY INDIGENT PRISONERS

Under the 1996 Prison Litigation Reform Act (PLRA), indigent prisoners need not pay federal court filing fees in full prior to initiating litigation or an appeal. *See* 28 U.S.C. § 1915(b)(1). Ultimately, however, "the prisoner shall be required to pay the full amount of a filing fee." *Id*. The amount of the initial payment depends on the average deposits to and balance in the prisoner's inmate account. The statute provides:

> The court shall assess, and when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account; or
> >
> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

*Id*.

The remainder of the filing fee is to be paid in monthly installments. The amount of each installment is prescribed by § 1915(b)(2):

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the

-3-

prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Although the matter is not without doubt, we interpret the word "income" in this provision to include all deposits to the prisoner's inmate account, whether the deposit be earned income, a gift, or otherwise. The word "income" can be used to denote gross receipts. *See Lukhard v. Reed*, 481 U.S. 368, 375 (1987) ("[G]eneral and legal sources . . . commonly define 'income' to mean 'any money that comes in[.]'"). And this interpretation of the word produces consistency between § 1915(b)(2) (which provides that monthly payments equal 20% of the prior month's *income*) and § 1915(b)(1) (which provides that the initial payment be 20% of the greater of average monthly *deposits* or average monthly *balances*, regardless of the source of deposits). We see no reason why Congress would include, say, gifts for the purpose of calculating the initial payment while exempting that source for the purpose of calculating monthly payments. Indeed, given Congress's declaration that "the prisoner shall be required to pay the full amount of a filing fee," we would expect it to proceed as any creditor and look to all deposits to the prisoner's account as potential sources for the payment. Morever, we question whether Congress would have expected prison officials to investigate whether a deposit to an inmate account was a gift from a parent, book royalties, or deferred payments on a narcotics transaction. *See Lucien v. DeTella*,

-4-

141 F.3d 773, 776 (7th Cir. 1998) ("income" in    § 1915(b)(2) refers to all deposits to prisoner's account).

These fee provisions are intended "'to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.'" *In re Smith*, 114 F.3d 1247, 1249 (D.C. Cir. 1997) (quoting *Leonard v. Lacy*, 88 F.3d 181, 185 (2d Cir. 1996)). "The PLRA is designed to require the prisoner to bear some marginal cost for each legal activity." *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000).

The obligation to pay is not unlimited. The PLRA does not prohibit a prisoner from bringing a civil action or appealing a civil judgment when he has no assets or means to pay an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4). Also, as noted above, when the prisoner does receive money, only 20% can be applied to a particular filing fee. And

> [t]o further ensure that prisoners need not totally deprive themselves
> of those small amenities of life which they are permitted to acquire
> in a prison . . . beyond the food, clothing, and lodging already
> furnished by the state, section 1915 allows payment to be taken from
> the prisoner's account only where the amount in the account exceeds
> $10.

*Shabazz v. Parsons*, 127 F.3d 1246, 1248 (10th Cir. 1997) (internal quotation marks omitted).

But when a prisoner has sufficient income to pay a monthly partial filing fee and instead spends his money on amenities at the prison canteen, he cannot be excused for failing to make the required partial payments. If a prisoner has the means to pay, failure to pay the filing fee required by § 1915(b) may result in the dismissal of a prisoner's civil action. *See In re Smith*, 114 F.3d at 1251; *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997). In addition, if a court order requires partial payments, the Federal Rules of Civil Procedure allow a district court to dismiss the action for failure to comply with the order. *See* Fed. R. Civ. P. 41(b).

## II. PLAINTIFF'S PAYMENT HISTORY

### A. The Initial Order

When Plaintiff filed his complaint on February 7, 2000, the district court granted him leave to proceed without prepayment of fees and without payment of an initial partial filing fee because there were insufficient funds in his inmate account. In accordance with § 1915(b)(2), the district court entered an order stating:

> Plaintiff remains obligated to pay the full amount of the required $150.00 filing fee pursuant to § 1915(b)(1) regardless of the outcome of this action. It is
>
> FURTHER ORDERED that, until the $150.00 filing fee is paid in full, [Plaintiff] shall make monthly payments to the court of twenty (20) percent of the preceding month's income credited to his account or show cause why he has no assets and no means by which

to make each monthly payment. [Plaintiff] is directed to make the necessary arrangements to have the monthly payments identified by the civil action number on this order. In order to show cause, the plaintiff must file a current certified copy of his trust fund account statement. It is

FURTHER ORDERED that if [Plaintiff] fails to have the appropriate monthly payment sent to the clerk of the court each month or to show cause each month as directed above why he has no assets and no means by which to make the monthly payment, the Prisoner's Civil Rights Complaint may be dismissed without prejudice and without further notice.

R. Vol. I, Doc. 11, at 2-3.

B.  Monthly Payments

The following discussion details Plaintiff's repeated failure to remit the required payments when he had funds available, even while he made discretionary purchases that drained his account. In summary, we will see that during the course of this litigation Plaintiff received income of $288.83, but, even after several court orders directing him to make the required payments, he paid the district court a total of only $7.14.

At the outset Plaintiff made no monthly payments for several months, but he justified this failure to pay by submitting monthly statements of his inmate account showing only $5.00 in income during this period and no balance over $10.00. In November and December 2000, however, he neither made a payment nor submitted an account statement. On January 25, 2001,      the district court issued an order to show cause, giving him fifteen days to make the required

-7-

monthly payment or explain why he was unable to pay. *Id.*, Doc. 60. The order

expressly warned Plaintiff that failure to comply with the order could result in the

dismissal of his action without further notice. *Id*. at 2.

Plaintiff mailed his response to the show cause order on January 31, 2001.

He attached his past-due account     statements, which revealed that he had received

a money order deposit of $20.00 on November 20, 2000, and a check deposit of

$12.28 on December 15, 2000. *Id*., Doc. 62, at 17. Yet Plaintiff had made

no payments to the district court, as required by § 1915(b) and the district

court's order, although he had spent at least $17.00 on discretionary purchases

between November 27, 2000, and January 19, 2001.[1]

---

[1]     There are two primary types of debit transactions described in Plaintiff's account statements:

(1) "COMMISSARY FORM" debits, which appear to be payments that Plaintiff authorized using a withdrawal consent form entitled "BP-199(45) Request for Withdrawal of Inmate's Personal Funds." It is not always possible to discern the purpose of these payments. When Plaintiff made payments to the district court, there are matching "COMMISSARY FORM" debits described on the accompanying account statements. *Compare* R. Vol. III, Doc. 186 *with* Doc. 93, at 5; *see also id*., Docs. 201 and 215. When the prison automatically deducted funds to reduce Plaintiff's prior encumbrances under the prisoner's 50/50 program, these reductions are also described as "COMMISSARY FORM" debits. *See, e.g.*, Vol. II, Doc. 71, at 4. Thus, out of an abundance of caution, we have not categorized any of the "COMMISSARY FORM" debits as discretionary purchases by Plaintiff, even though some may well be voluntary withdrawals.

(2) "SALE/REGULAR" debits, which appear to be discretionary purchases Plaintiff has made at the prison canteen. When we state that Plaintiff has made discretionary purchases, we are referring only to debits described in his

(continued...)

In his response to the show cause order, Plaintiff stated that he had thought no more statements were due because the pretrial conference had been held. He apologized for his error and stated that he would not repeat it and would make payments "as his financial ability allowed him." He also asked the court to take judicial notice that he had entered into the prison's "50/50 program" and was attaching a copy of the agreement. No copy of the agreement was attached, although Plaintiff did attach an "Institution Supplement," which contains an official description of procedures for implementing the program. That document suggests that the 50/50 program provides that half the prisoner's income will be used to pay certain prior debts, leaving the remainder for other use.

The district court discharged its order to show cause on April 12, 2001, reasoning that Plaintiff would be able to make regular payments toward the filing fee as a result of his participation in the 50/50 program. *Id*., Doc. 79, at 2. The district court expressly advised Plaintiff, however, that:

> the law and the Court's previous Orders in this case require
> [Plaintiff] to make a monthly filing fee payment every month until
> the full filing fee is paid. . . . [Plaintiff] cannot voluntarily spend his

---

[1](...continued)
account statements as "SALE/REGULAR" debits.

Plaintiff's account statements also describe "ENC./DISCIPLINE" transactions, which appear to be encumbrances imposed against his account by the prison as disciplinary sanctions. We have not categorized these encumbrances as discretionary purchases.

monthly income, and then claim he is without funds to satisfy his federal court filing fee obligations.

*Id.* The district court again warned Plaintiff that his complaint was subject to dismissal if he did not make the required monthly payment or show cause why he could not do so. *Id.*

Unfortunately, the court's discharge of the show cause order was based on a Plaintiff-induced misconception. As revealed when Plaintiff later filed a 50/50 agreement executed by him on November 27, 2001, the 50/50 program is not available to pay debts arising under the PLRA. *Id.* Doc. 235, Exh. A; *see* magistrate judge's Report and Recommendation, Oct. 15, 2002, at 5 ("[T]he [50/50] program does not encompass . . . PLRA filing fees incurred by the prisoner . . . .").

Not surprisingly, then, Plaintiff's promise to make payments on his filing fee was unfulfilled after he filed his response to the court's show cause order. Not only did he not make the required payments on his income in November and December 2000, but he also failed to make the required payment of $3.00 based on a $15.00 money order deposit to his inmate account in February.

Plaintiff next reported income in his financial report for July 2001. The report showed receipt of a $20.00 money order on July 23 and a $10.00 money order on July 25. In his filing Plaintiff asserted that the prison was failing to send payments to the district court when money was deposited to his account. *Id.*

Doc. 109, at 2. He claimed that he had made numerous attempts to send in the proper withdrawal forms but they were returned, and that he had complained to the prison's financial offices but received no adequate reply. *Id.*

Plaintiff then failed to file the required October 2001 account statement, and the district court issued a second show cause order on November 21, 2001. *Id.*, Doc. 140. Again, the district court warned Plaintiff that failure to comply could result in dismissal of his complaint without further notice. *Id.* at 2.

In response to the second show cause order, Plaintiff said that his financial report was delayed because he had been temporarily transferred to another institution, and that he had in fact sent in the report on November 16, before the show cause order had issued. (The report showed a November deposit of $6.20, giving him a new balance of $36.20, but he made no payment to the district court.) *Id.*, Doc. 141, at 4. Plaintiff claimed in his response that he had signed the necessary withdrawal forms to authorize payment to the district court, and it was therefore the prison's fault that payments were not being made. *Id.*, Doc. 145, at 2.

Plaintiff's next account statement shows that in December 2001 his $36.20 balance had dropped to $1.45, in part through discretionary purchases of $16.65. R. Vol. III, Doc. 154, at 4. Plaintiff then received a deposit of $15.00 on January 24, 2002. *Id.*, Doc. 159, at 4. Plaintiff failed to make any payment

toward his filing fee and complained again to the court that he was having trouble getting the prison to send payments, but he provided no further explanation. *Id*., Doc. 162, at 1.

Subsequent account statements show receipt of a $10.00 money order deposit on February 14, 2002, *id.*, Doc. 163, at 4, a $20.00 money order deposit on April 9, 2002, a performance pay deposit of $23.52 on April 10, 2002, a $15.00 money order deposit on April 17th, *id.*, Doc. 176, at 4, and a performance pay deposit of $26.04 on May 10, 2002. Thus, in the first five months of the year, Plaintiff received income of $109.56, from which he owed $21.91 (20% of $109.56) toward his filing fee. During that period he made discretionary purchases of $58.73, but still no filing fee payments.

On June 18, 2002, while the show cause order of November 21, 2001, was pending, Defendants filed a motion (the Motion to Dismiss), contending that the court should dismiss Plaintiff's complaint with prejudice as a sanction for his failure to comply with the court's numerous orders regarding filing fee payments. *Id*., Doc. 183. Defendants pointed out that Plaintiff had failed to make *any* payment toward his filing fee obligations in the twenty-eight months since he had filed his complaint, although he had received to date about $200.00 in income. *Id*. at 5-7. Defendants noted that Plaintiff had made numerous voluntary

purchases throughout the litigation, rather than making payments to the district court. *Id*. at 7.

Apparently coincidentally, Plaintiff sent his first payment to the court in June. The prison check for $4.00 is dated June 21, 2002, but the withdrawal from his inmate account occurred on June 13, predating the Motion to Dismiss. *Id*., Doc. 186.

In response to Defendants' motion, Plaintiff again claimed that despite his frequent attempts to get prison authorities to make the necessary payments, the prison's financial and business officials were failing to do so. *Id.*, Doc. 189, at 3, 10-13, and 14. He asserted that on August 28, 2001, he had authorized the prison's financial management to remove 20% from his account as money was deposited and that he was not required to sign any additional withdrawal forms. *Id*. at 4.

The letter Plaintiff attached as support for this claim, however, fails to substantiate his assertion that he had authorized withdrawals for filing fees in this case. His letter to the prison legal department did complain that the prison was failing to send payments to the court in this case, and it did say that he wanted the prison to send the filing fees to the district court whenever funds were available. *Id*. at 10-12. But the letter also stated that the prison should "personally leave me the *** alone," *id*. at 10, and directed the prison not to

remove any of his funds without his authorization, *id*. at 12. And although the letter advised that Plaintiff was enclosing a withdrawal authorization form, *id*., no copy of such form is attached in the record copy. Likewise, a March 18, 2002, inmate request form attached to his response asked prison officials whether he needed to sign a new withdrawal authorization form, *id*. at 14, but this document does not support his claim that the prison was somehow impeding his ability to make the necessary payments.

Significantly, Plaintiff's failure to make the required monthly payments continued. After the Motion to Dismiss was filed, Plaintiff clearly was able to remit payments to the district court, and he does not contend otherwise. After all, he had sent in a $4.00 payment in June. This amount, however, was far less than the 20% of income that he owed. And he had the funds to pay more than the $4.00. Plaintiff's account statement shows that he had received a performance pay deposit of $25.20 on June 10 and a cash deposit of $13.99 on June 13. *Id*., Doc. 193, at 5-6. Nonetheless, rather than making the required filing fee payment, he made discretionary expenditures of $15.73 on June 13 and $15.05 on June 20, ending the month with a balance of $.55 in his account.

On July 11, 2002, Plaintiff made a second payment to the district court, of only $1.10. *Id*., Doc. 201. Plaintiff had received performance pay that month of $21.60, he had at least $10.80 available for his personal use, and he made

-14-

discretionary purchases totaling at least $9.50; yet he sent the court far less than even the $7.84 he owed from his previous month's income of $39.19.     *Id.*, Doc. 204, at 6.  This, while the Motion to Dismiss was pending.

On August 15, 2002, Plaintiff sent to the district court his third and final payment, a prison check for $2.04.  This did not cover the $4.30 due out of his July income of $21.60, much less his arrearages due from prior income.     *Id.*, Doc. 215.  Although Plaintiff had received money order deposits of $20.00 on August 12 and $10.00 on August 15, Doc. 217, at 5, Plaintiff once again failed to use the income available to him to make his required payments.

On October 15, 2002, the magistrate judge recommended dismissal with prejudice.  *Id.*, Doc. 222.  The magistrate judge's report and recommendation thoroughly set forth Plaintiff's history of nonpayment and insufficient payment, and presented a detailed explanation and analysis of its findings and ultimate conclusion that only the extreme sanction of dismissal would satisfy the interests of justice.  *Id*.  This recommendation was adopted by the district court.  *Id.*, Doc. 237.

## III.  PLAINTIFF'S CLAIMS ON APPEAL

### A.  Alleged Difficulties with the Prison

On appeal Plaintiff alleges that the district court erred in dismissing his lawsuit because he had done all he could to make the required payments.  He

contends that he had repeatedly told the district court that he was having trouble getting the financial office at the prison to send the payments to the court. He also complains that he was not granted an evidentiary hearing to establish his compliance.

Plaintiff is correct that before dismissing a prisoner's complaint for failure to comply with an order regarding partial payments toward a filing fee, the district court should ordinarily take reasonable steps to ascertain whether the prisoner attempted to comply with the fee order by authorizing prison officials to withdraw required payments. *See Wilson v. Sargent*, 313 F.3d 1315, 1320-21 (11th Cir. 2002) (finding abuse of discretion when district court dismissed for failure to make initial filing fee payment without making inquiry into whether prisoner had attempted to comply with fee order); *Hatchet v. Nettles*, 201 F.3d 651, 654 (5th Cir. 2000) (same). In this case, however, the record supports the findings below that Plaintiff was not attempting to comply with the fee orders, and the district court gave Plaintiff ample opportunity to submit evidence of compliance.

The only evidence Plaintiff presented in support of his allegation that the prison was refusing to send his authorized payments is the August 28, 2001, letter he sent to the prison's legal department, in which he states that he had previously authorized the prison to remove 20% from his account as money was deposited. *Id.*, Doc. 189, at 10-13. But he provided the court with no documents purporting

-16-

to authorize such withdrawals. And the very letter upon which he relies is actually strong evidence of his lack of cooperation. In it, Plaintiff states that he is not going to sign any future withdrawal forms, and he tells the prison officials not to remove any of his funds without his authorization. *Id*. at 10-12. Also probative of Plaintiff's failure to authorize withdrawals to pay the filing fee in this case are copies of his account statements with notations that Plaintiff was under a PLRA court order but had failed to sign a withdrawal-authorization form. *See* Vol. II, Doc. 123, at 4; *id*., Doc. 141, at 4; Vol. III, Doc. 153, at 4; and *id*., Doc. 183, at 13. (It is not clear, however, whether these notations refer to the PLRA orders in this case or in one of Plaintiff's numerous other cases pending in district court.)

Further suggesting that Plaintiff was not truly seeking to pay the filing fee by authorizing payment by the prison is his conduct once his payments began in June 2002. Plaintiff makes no claim that the prison hampered him in making payments from that time on. Yet he still failed miserably to comply with his obligations. Although he received deposits of $90.79 from June 2002 until the dismissal of his case, Plaintiff paid only $7.14 toward his filing fees.

The magistrate judge also properly took judicial notice that in several other cases before the same district court, Plaintiff had refused to authorize the prison to make withdrawals for court fees. Plaintiff has not disputed this fact.

Moreover, even assuming the truth of Plaintiff's allegation that the prison failed to make authorized payments, this does not excuse him from his obligations under the fee orders. If Plaintiff had in fact directed the prison to make the required payments and the prison had failed to do so, it was still Plaintiff's obligation to notice this lapse and not spend the money until the required payments were made to the court:

> A prisoner who fails to ensure that the required sum is remitted in one month must make it up later . . . . If in a given month the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly.

*Lucien*, 141 F.3d at 776. Plaintiff did not refrain from spending the monies owed to the district court; rather, he repeatedly drained his account by making discretionary withdrawals. Had Plaintiff retained the money he owed for filing fees in this case, he would have had sufficient funds in his account to remit all the past-due amounts when the Motion to Dismiss was filed (at which time he managed to make a payment).

As for Plaintiff's contention that he was entitled to an evidentiary hearing before dismissal, we hold that the district court did not abuse its discretion in proceeding on the record before it. By issuing repeated orders to show cause and providing Plaintiff with multiple opportunities to produce a copy of any proper authorization that had been ignored by the prison, the district court went beyond

-18-

the procedures recommended in *Wilson*, 313 F.3d at 1320-22, and *Hatchet*, 201 F.3d at 654 ("[T]he district court should take reasonable steps to ascertain whether the prisoner has complied with the order by allowing objections to a magistrate judge's report, issuing a show-cause order, communicating by telephone, fax, or e-mail with officials of the custodial institution, issuing an order to the custodial institution, or using any other method designed to obtain the relevant information." (citations omitted)).

B. Alleged *Ex Parte* Communication

Next, Plaintiff claims that the district court erred in dismissing his complaint because it allowed an *ex parte* communication to influence its decision. Plaintiff appears to contend that while Defendants' Motion to Dismiss was pending, a prison attorney told his prison-unit counselor that the case would be dismissed with prejudice. On its face this communication is not a prohibited *ex parte* communication because it does not allege any communication between an attorney or party and a judicial officer. *See* D. Colo. Local Rule 77.2 (in the absence of previous authorization, no attorney or party to any proceeding shall send letters, pleadings, or other papers or copies directly to a judicial officer). There is no evidence that any of these individuals had an improper conversation or communication with the magistrate judge or district court, and neither the prison, its attorney, or the unit counselor are parties in this case. Moreover, we do not find

-19-

record support for Plaintiff's claim that he informed the magistrate judge or district court of any alleged *ex parte* communication. The documents Plaintiff attached to his brief as support for this allegation do not support his claim, nor do we find any support based upon an independent review of the record.

C. Dismissal with Prejudice

Finally, Plaintiff challenges the district court's dismissal of his complaint with prejudice as a sanction for his failure to comply with court orders. *See* Aplt. Reply Br., at 9. Under Federal Rule of Civil Procedure 41(b), a district court may dismiss an action with prejudice if the plaintiff fails "to comply with [the Federal Rules of Civil Procedure] or any order of court." Before choosing the sanction of dismissal, the district court considered and addressed the relevant factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992): (1) the amount of actual prejudice to the opposing party, (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether a lesser sanction would be effective. The court found that factor (1) would not justify dismissal but the other factors called for that sanction. As noted and rejected above, Plaintiff's claim is that he was not culpable. Plaintiff does not, however, otherwise dispute the district court's findings with respect to the *Ehrenhaus* factors, nor do we find any error in the district court's analysis of the relevant factors.

-20-

In particular, we are struck by Plaintiff's defiance of the court. Plaintiff was warned from the outset of this litigation that failure to make the required payments could result in dismissal of his complaint, R. Vol. I, at Doc. 11; he was expressly warned in April 2001 that he could not make voluntary withdrawals and then claim to have insufficient assets to make his payments, *id.*, Doc. 79; he was warned in January, April, and November 2001, that dismissal was a possible sanction for failure to comply with the court's order, *id.*, Doc. 60, at 2, Doc. 79, at 2 and Vol. II, Doc. 140, at 2; and he was on notice from the date of Defendants' Motion to Dismiss that dismissal could well be imminent if he did not immediately correct his past failures. Yet even while the Motion to Dismiss was pending, Plaintiff continued to authorize payments to the court that were less than he owed on income currently deposited to his account and were significantly less than his past-due amounts. And, as always, he continued to make discretionary purchases far in excess of the amounts he remitted to the court. Clearly, Plaintiff "thought clothing and sundries more valuable than continued pursuit of litigation." *Lucien*, 141 F.3d at 774.

We caution, however, that our review of Plaintiff's egregious misconduct should not be interpreted as suggesting that equally egregious misconduct is necessary to justify dismissal with prejudice.

**IV. CONCLUSION**

The judgment of the district court is AFFIRMED. Plaintiff is reminded that he remains obligated to make partial payments to this court until the entire appellate filing fee is paid in accordance with 28 U.S.C. § 1915(b). The mandate shall issue forthwith. This appeal counts as a strike against Plaintiff under 28 U.S.C. § 1915(g).