In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1376

CHARLES SULTAN,

*Plaintiff-Appellant,*

*v.*

JAMES FENOGLIO, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12-cv-1229-MJR-SCW — **Michael J. Reagan**, *Chief Judge.*

SUBMITTED DECEMBER 11, 2014[*]— DECIDED JANUARY 5, 2015

Before WOOD, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. Charles Sultan, an Illinois inmate, asserts in this lawsuit that medical providers and other staff at the Lawrence Correctional Center forced him to live in un-

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and record. See FED. R. APP. P. 34(a)(2).

sanitary conditions and denied him medical care in violation
of the standards required by the Eighth Amendment, as it
applies to the states. More than a year after his suit was filed,
and while the defendants' motions for summary judgment
were pending, the district court on its own initiative dis-
missed the case on the ground that Sultan had not paid the
initial partial filing fee that the court had assessed pursuant
to 28 U.S.C. § 1915(b)(1). We conclude that the court should
not have taken this step, and we thus remand for further
proceedings.

At the time Sultan filed his complaint in December 2012,
he moved to proceed *in forma pauperis*. As required by 28
U.S.C. § 1915(a)(2), he attached a certified statement from his
prison trust account showing the "funds available" and
charges made during the previous six months. The state-
ment revealed that his account was more than $300 in the
red. The district court granted Sultan's motion and assessed
an initial partial filing fee of $2.02. (Presumably the court set-
tled on this number because it is approximately 20% of the
average monthly deposits to Sultan's account; he earns $10
per month from a prison job. See 28 U.S.C. § 1915(b)(1)(A).)

Apparently because Sultan's account had less than zero
dollars in it, the prison did not remit the required $2.02 to
the district court. In November 2013, a magistrate judge en-
tered a minute order directing Sultan to show cause why the
action should not be dismissed for failure to pay. Sultan re-
sponded that he did not control his prison trust account and
that it was the account administrator at Lawrence who was
at fault for not forwarding payment. He also informed the
magistrate judge that his daughter had tried to wire the
money through Western Union. Sultan tendered an updated

statement from his prison trust account, a grievance he submitted to prison administrators complaining that staff had not complied with the district court's order to send the fee, and a Western Union receipt showing payment of $2.25 to "District Court 49 3 03." Telling Sultan that the responsibility for paying rested with him, the magistrate judge rejected Sultan's response as "unavailing." The judge also informed Sultan that the Western Union receipt did not qualify as proof of payment. He gave Sultan another 30 days, until February 3, 2014, to pay the fee.

Before that deadline, Sultan filed a motion seeking 30 more days to pay. He explained again that he could not control disbursements from his trust account (by then even more deeply in the hole), and he pleaded that he needed more time to request payment from that account. He later sent a copy of a form entitled "Offender Authorization for Payment" dated January 14, which had been returned stamped "insufficient funds." Sultan's account statement shows that indeed he lacked sufficient funds to pay the $2.02 fee on January 14. On January 17, Sultan received a "payroll adjustment" of $9.52, but for unexplained reasons the account administrator did not apply that amount against Sultan's deficit. For the next six weeks at least, $2.02 may have been available to send to the clerk of the court.

The magistrate judge did not rule on Sultan's motion until two days after the February 3 deadline. At that point he denied it on the ground that Sultan had not shown good cause for an extension. The next day the district court dismissed Sultan's suit with prejudice for failure to prosecute. The court reasoned that Sultan had not "denied having the requisite funds." Sultan timely moved for reconsideration,

which the district judge denied. The court mistakenly assert-ed that it could not rule on Sultan's motion because he al-ready had filed a notice of appeal from the dismissal. See FED. R. APP. P. 4(a)(4)(B)(i); *Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 737 (7th Cir. 2004). In any event, it added, Sul-tan had not shown a manifest error "or any other ground justifying Rule 59(e) relief." That very day, Sultan's $2.02 payment arrived at the courthouse.

Sultan argues on appeal that the court abused its discre-tion by dismissing his suit. We agree with him. We begin with the fact that he is not entitled on his own to disburse funds from his prison trust account. This is a well-recognized fact; prison trust "accounts" are not like bank ac-counts in which the depositor has the contractual status of creditor.  See *Thomas v. Butts*, 745 F.3d 309, 313 (7th Cir. 2014); *Wilson v. Sargent*, 313 F.3d 1315, 1320–21 (11th Cir. 2002); *Hatchet v. Nettles*, 201 F.3d 651, 652 (5th Cir. 2000). Nor to our knowledge is there any rule of priority that requires state administrators to remit payments to a federal court be-fore they satisfy an inmate's debt to the prison itself. (We wondered in an earlier case whether the prison might be lia-ble if it fails to comply with a judicial order under the Prison Litigation Reform Act. *Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998); compare *Hall v. Stone*, 170 F.3d 706, 708 (7th Cir. 1999) (holding federal warden in contempt for failing to remit comparable payment). As we did in *Lucien*, however, we can reserve this question for another day, because we have a more straightforward way to resolve the present case.) We note, however, that there is actually a systemic problem in prison lawsuits like Sultan's: the law requires the payor (the prison) to process a drawer's request for payment to permit the drawer to sue the payor. No such conflict of

interest plagues ordinary commercial transactions. Even assuming that the prison is willing to put the court's order for payment somewhere in the queue of Sultan's creditors, it is entirely predictable that the prison will prefer to postpone Sultan's ability to pursue litigation against itself.

Sultan therefore should not be penalized because the prison administrators failed to forward the $2.02 as directed by the court's order. He did all that he could when he sent prison administrators a form requesting payment from his account, and he filed grievances when they took no action. See *Wilson*, 313 F.3d at 1321; *Hatchet*, 201 F.3d at 654.

There is another, deeper problem with the district court's action: it conflicts with the statute. Section 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." This court has addressed the meaning of that language as it applies to appeals, but the principles we articulated apply equally to cases in the district court:

> If, when a prisoner files his appeal, the balance of his trust account is zero, the case proceeds despite the lack of payment. But when a prisoner does not adhere to the statutory system, a court may dismiss the appeal without regard to his ability (or inability) to pay. For example, if the prisoner does not furnish a statement of his trust account, we issue an order requiring him to do so within 21 days—with a warning that unless the information and requisite payment are forthcoming, we will dismiss the appeal for want of prosecution (but without relieving the prisoner of the obli-

gation to pay up eventually, for that obligation is incurred, as it is for a solvent litigant, by the act of filing the notice of appeal). If the prisoner sends a trust account statement showing that even partial payment is not required, then the appeal proceeds under § 1915(b)(4), but if the prisoner disdains to comply with the order, the appeal ends.

*Robbins v. Switzer*, 104 F.3d 895, 897–98 (7th Cir. 1997). A balance of minus $300 counts, for this purpose, as a balance of zero. When Sultan filed his complaint in December 2012, he had less than zero funds available. He complied with the remainder of the statute, however, by furnishing the certified statement of his trust account. See also *Thomas*, 745 F.3d at 312; *Cosby v. Meadows*, 351 F.3d 1324, 1327 (10th Cir. 2003); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002).

The district court might have thought that the moment Sultan had $9.52 in his account (January 17, 2014), it could demand that he turn over the $2.02 partial payment. But that position would be in tension with the statutory provision limiting the duty of prison administrators to forward payments from the account to "each time the amount … exceeds $10 … ." 28 U.S.C. § 1915(b)(2). It is possible to read that language as addressing only the monthly payments following the initial partial payment. See, *e.g.*, *Wilson*, 313 F.3d at 1320; *Hatchet*, 201 F.3d at 653; see also *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997) (interpreting this part of the statute as a means of ensuring that prisoners need not "totally deprive themselves of those small amenities of life" as the price of suing). But such a narrow reading is not compelled by the language of the statute, and we can see no policy that would be served by refusing to apply it to initial payments.

Our view would be different if there were evidence that Sultan was intentionally depleting his trust account to avoid paying his filing fee. See *Thomas*, 745 F.3d at 312; *Wilson*, 313 F.3d at 1321 n.7. If that were happening, the district court would be entitled to deny *in forma pauperis* status based on 28 U.S.C. § 1915(a)(3). But Sultan appears to have spent his funds (and incurred charges) at the prison law library and for legal postage, which by regulation Illinois allows without a set limit. 20 ILL. ADMIN. CODE § 430.40(b); *Turner-El v. West*, 811 N.E.2d 728, 734 (Ill. App. Ct. 2004). As we noted earlier, Sultan was earning about $10 each month from a prison job, but that money eventually went toward his legal charges, not for nonessential items. See *Cosby*, 351 F.3d at 1333–34 (affirming dismissal when prisoner spent funds at prison canteen instead of paying filing fee). We do not know why the account administrator did not forward $2.02 as soon as it became available, but we do not see evidence that Sultan frustrated payment. To the contrary, the record suggests that he explored several ways to comply with the court's order. His grievance indicates that he may have thought that a withdrawal of the $2.02 already had been authorized. Yet after receiving the order to show cause, he submitted a new form requesting payment in January 2014. Prison authorities returned that form stamped "insufficient funds" instead of sending the money to the court when Sultan's paycheck hit the account three days later. Meanwhile, Sultan also had asked his daughter to pay the fee for him through Western Union, and although she initially may have filled out the paperwork incorrectly, the payment ultimately went through. Had the court given Sultan another 30 days as requested, the money would have arrived within that time.

One matter remains. Sultan argues in his reply brief that it was an abuse of discretion for the district court not to recruit pro bono counsel. But Sultan waived this argument by omitting it from his opening brief. See *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013); *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). In any event, Sultan's motions for appointment of counsel were denied without prejudice, and he may renew his request for counsel after the matter is returned to the district court.

Accordingly, we VACATE the dismissal and REMAND the case for further proceedings consistent with this opinion.