**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 19, 2019[*]
Decided August 19, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1019

| | |
|---|---|
| JEFFREY E. OLSON,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-666-jdp |
| JAMES SCHWOCHERT,<br>    *Defendant-Appellee*. | James D. Peterson,<br>*Chief Judge*. |

**O R D E R**

Jeffrey Olson is a Wisconsin prisoner who owes money to the state and federal governments but does not like the way his debts are being paid out of his prison trust account. He filed a lawsuit under 42 U.S.C. § 1983 against a director of the Wisconsin Department of Corrections, seeking to enjoin the collection of debts that he incurred through a state criminal judgment and obtain a refund of what he had already paid. In this appeal challenging the dismissal of his complaint with prejudice at screening, he

---

[*] The defendant was not served with process in the district court and is not participating in this appeal. We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

also opposes the way his prison attempted to collect the initial partial filing fee for this litigation. We affirm the judgment.

A Wisconsin state court entered a judgment of conviction against Olson that included an order to pay $210 as a "Mandatory Victim/Wit[ness] Surcharge," and $60 in court costs, with the costs "to be paid as a condition of extended supervision." Olson interprets the order to require that he pay $270 only after he is released from prison in 2047. Beginning in 2016, however, prison officials have diverted money from Olson's prison trust account deposits to pay the surcharge.[1]

In response to these deductions, Olson brought this suit against James Schwochert, an administrator for the Wisconsin Department of Corrections, in his personal and official capacities. Schwochert had instituted a state-wide policy governing the procedures for deducting money from deposits made into prison trust accounts to pay prisoners' debts. The policy increased the maximum deduction from 25% to 50% of deposits. Olson alleged that this policy modified his criminal judgment in violation of state law as well as the Due Process, Takings, and Ex Post Facto Clauses of the United States Constitution. He sought declaratory relief, an injunction prohibiting the deductions, refund of the money already deducted, and punitive damages under 42 U.S.C. § 1983.

A magistrate judge granted Olson leave to proceed in forma pauperis, assessed an initial partial filing fee, and ordered that "[i]f plaintiff does not have enough money" in his "regular account," he "should arrange with authorities to pay the remainder from [his] release account." A release account is a separate prison trust account that, under Wisconsin law, contains funds to be made available to an inmate on his release (though both state and federal courts in Wisconsin have permitted its use to pay at least initial court filing fees). *See* WIS. ADM. CODE § DOC 309.466; *Kennedy v. Huibregtse*, 831 F.3d 441, 442 (7th Cir. 2016); *Carter v. Bennett*, 399 F. Supp. 2d 936, 936–37 (W.D. Wis. 2005).

Olson understood the magistrate judge's order to mean that the prison's business office could pay the partial filing fee from *only* his release account. When prison officials told him that he first had to deplete his regular account and then take the remaining balance from his release account, Olson moved to hold them in contempt.

---

[1] Olson alleges that officials took $270, but an exhibit to his complaint shows that only the $210 Victim/Witness surcharge had been collected. That surcharge was due at the time of conviction. *See* WIS. STAT. § 973.045(2), (4).

The magistrate judge denied the motion, explaining that the officials were correct. Eventually, the district judge waived the initial partial filing fee on the understanding that Olson had approved payment from his regular account, but the disbursement was not being processed. *See* 28 U.S.C. § 1915(b)(4); *Sultan v. Fenoglio*, 775 F.3d 888, 890 (7th Cir. 2015).

The district judge then screened the complaint under 28 U.S.C. § 1915A and dismissed it for failure to state a claim. He determined that Olson had no right to individual notice or a hearing before prison officials could enforce its new policy, so Olson's due-process rights were not violated. Nor, the judge concluded, was a change in the schedule for collecting a prior debt a punishment or a taking.

On appeal, Olson first argues that he stated a claim against Schwochert under 42 U.S.C. § 1983 and, to the extent he did not, that the judge should have given him an opportunity to amend his complaint. Olson's complaint fails to a state a claim for several reasons, the most critical being the chosen defendant. A suit against an officer of a state agency in his official capacity is a suit against the state, and the state is not a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kolton v. Frerichs*, 869 F.3d 532, 535–36 (7th Cir. 2017). Moreover, Olson does not (nor could he) plausibly allege that Schwochert was personally involved in taking his money or enforcing state policy. Olson thus cannot sue Schwochert either in his individual capacity for damages or in his official capacity for prospective relief under *Ex parte Young*, 209 U.S. 123 (1908). *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (personal involvement needed under § 1983); *Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir.) (enforcement needed under *Young*), *cert. denied*, 139 S. Ct. 126 (2018).

Olson contends that he was entitled to a chance to amend his complaint. But even if Olson could have identified a proper defendant, amendment would still have been futile, so we see no error in the district judge's decision to dismiss Olson's complaint with prejudice. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015). The district judge properly concluded that the Due Process Clause did not entitle Olson to individual notice and a hearing before the enactment of a generally applicable regulation. *Pro-Eco, Inc. v. Bd. of Comm'rs*, 57 F.3d 505, 513 (7th Cir. 1995). And even if Schwochert's policy were invalid under Wisconsin law (Olson points to three state trial courts that have apparently so held), the Due Process Clause does not provide a remedy for violations of state law. *See Wozniak v. Adesida*, No. 18-3315, 2019 WL 3562011, at *3 (7th Cir. Aug. 6, 2019).

Olson's other theories fare no better. Wisconsin's decision to speed up collection of his pre-existing debts is not a "punishment" within the meaning of the Ex Post Facto Clause. *See Quarles v. Kane*, 482 F.3d 1154, 1155 (9th Cir. 2007); *cf. In re Buddhi*, 658 F.3d 740, 742 (7th Cir. 2011) (recognizing that Federal Bureau of Prisons can modify terms of payment plan). Nor is it a taking because the money is seized not for public use but to pay Olson's debts. That the debt is to the state, and therefore the money goes to the state's general funds, does not matter, because the obligations were imposed under a lawful criminal judgment. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (recognizing that government need not compensate owner for property taken through means other than eminent domain).

Finally, Olson insists that the district judge should have held prison officials in contempt for failing to remit his initial partial filing fee entirely from his release account. But the officials followed the magistrate judge's order, so there was no contempt. *See Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015). In any event, the district judge waived the initial partial filing fee, so Olson was not injured by the prison's refusal to use his release account. And regardless how the initial filing fee was to be paid, further installments must be paid from his regular account, *see Carter*, 399 F. Supp. 2d at 936–37, at a rate of 40% of his monthly deposits because he filed both a complaint and this appeal, *see* 28 U.S.C. § 1915(b)(2); *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *abrogated on other grounds by Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000), *and Walker v. O'Brien*, 216 F.3d 626, 628–29 (7th Cir. 2000).

AFFIRMED