Rudolph L. LUCIEN, Plaintiff–Appellant,

v.

George E. DeTELLA, et al.,
Defendants–Appellees.

No. 96–2887.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 19, 1998.

Decided April 13, 1998.

Rehearing Denied April 23, 1998.

Rudolph L. Lucien (submitted on brief), pro se.

Before FAIRCHILD, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ Rudolph Lucien, one of the circuit's most frequent filers, see *Lucien v. Jockisch,* 133 F.3d 464 (7th Cir.1998) (the most recent of 29 decisions this court has issued in Lucien's cases), filed this suit under 42 U.S.C. § 1983 seeking damages from the warden and other officials of his prison. He contends that the defendants violated his constitutional rights by classifying him as an escape risk and curtailing his intra-prison movement. Classifications of inmates implicate neither liberty nor property interests, see *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), but Lucien contends that the defendants selected this classification in response to his litigation rather than his desire to change addresses, which if true makes out a constitutional claim. *DeTomaso v. McGinnis,* 970 F.2d 211, 214 (7th Cir.1992). Whether the facts support the claim is another matter, which the district court did not reach—because it did not allow Lucien to file his complaint. He sought to proceed *in forma pauperis,* and the district court conditionally granted this motion. The condition was prepayment of $18 toward the filing fee. Lucien refused to pay, the district court then declined to file the complaint, and Lucien took an appeal.

■ "Refused to pay" is a phrase with both factual and legal significance. Since April 26, 1996, when the Prison Litigation Reform Act took effect, prisoners have not had any say in the matter. When a prisoner files a civil action and does not prepay the entire fee, the district court assesses a partial filing fee and collects from the prisoner's trust account not only the partial fee but also installment payments until the balance is paid. See 28 U.S.C. § 1915(b); *Newlin v. Helman,* 123 F.3d 429 (7th Cir.1997). When Lucien filed his appeal, such an assessment was made, $14 was transferred from his account, and the court entered an order requiring the prison to remit 20% of each month's income to cover the rest of the $105 fee. (Lucien wants a refund, and we discuss that request below.) But Lucien tendered his complaint to the district court before the PLRA was enacted, when district judges had discretion to determine the amount and timing of prepayment. Prisoners could test the waters, learn what filing a complaint would cost, and decide whether they wanted to proceed. Lucien thought $18 excessive—which implies that he did not think much of his chances of success. For the factual component of the "refused to pay" phrase is incontestable. Lucien had the money but elected to spend it on other things. When the district court set the price at $18, Lucien had $60 in his prison trust account. Another $144 entered the account before Lucien notified the court of his refusal to pay. During these two months Lucien bought underwear, shirts, pants, towels, gym shoes, pens, ear plugs, toothpaste, writing paper, stamps, and other sundries, leaving a balance of 29¢ on the date he told the judge that he could not afford $18. The district court did not abuse his discretion in concluding that Lucien could have paid had he chosen to do so. That some of the income in the trust fund came from family members is irrelevant. Gifts become the property of the recipient. Lucien thought clothing and sundries more valuable than continued pursuit of litigation.

That is his choice; he must accept the consequences. The district court properly handled Lucien's complaint under pre-PLRA law, so it is unnecessary to remand (as we did in *Jockisch*) to give Lucien an opportunity to withdraw the complaint rather than see the full fee collected under the PLRA's terms. Because the complaint has never been filed, Lucien does not owe any fee, even the $18, for his attempt to commence this case in the district court.

 Lucien filed the notice of appeal after April 26, 1996, and the PLRA therefore applies to it. *Thurman v. Gramley*, 97 F.3d 185 (7th Cir.1996). The district court assessed a partial and periodic fee under the mechanism in § 1915(b). Whether the court should have done this is questionable. The district court in *Jockisch* concluded that Lucien has had at least three suits or appeals "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted", which under § 1915(g) requires prepayment of the entire fee in future cases, unless the prisoner "is under imminent danger of serious physical injury." Our opinion did not disagree with this conclusion—the fact that Lucien has filed more than 50 cases with a poor record of success implies that at least three have been dismissed on grounds enumerated in § 1915(g)—but held that the district court erred in applying this new requirement to a complaint Lucien lodged before April 26, 1996. Before authorizing periodic collection of the fee in future cases, district judges should determine whether § 1915(g) requires payment in advance. (This appeal satisfies the standard of § 1915(g) and thus counts as a strike; Lucien had no prospect of upsetting a discretionary decision that a prisoner who spends $200 on personal items in a two-month period could have afforded a partial fee of $18.)

 May Lucien recover what he has paid of the appellate fee? Certainly not. Filing fees are part of the costs of litigation. 28 U.S.C. § 1920(1). A prevailing appellant recovers the fee from the losing party in the award of costs. Fed. R.App. P. 39. But Lucien has lost and therefore bears the fee himself. His argument to the contrary— which includes an attack on the constitutionality of § 1915(b)(1) and (2) as amended by the PLRA—supposes that before April 26, 1996, indigent prisoners could litigate for free. They could not. "All § 1915 has ever done is excuse *pre*-payment of the docket fees; a litigant remains liable for them, and for other costs, although poverty may make collection impossible. See *McGill v. Faulkner*, 18 F.3d 456 (7th Cir.1994)." *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996) (emphasis in original). We know from *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), that Congress may require even indigent plaintiffs to prepay the filing fee in civil cases. If for some reason § 1983 cases are exceptions to this principle, cf. *M.L.B. v. S.L.J.*, —— U.S. ——, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), § 1915(b)(4) affords indigent prisoners everything to which they could be entitled. It reads: "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." The PLRA thus *never* blocks access to court solely on account of a prisoner's indigence—although a combination of indigence with a history of frivolous litigation may have this effect under § 1915(g). All the partial-prepayment and periodic-payment provisions in the amended § 1915 do is provide a means to collect from prison trust accounts sums that prisoners owe independently of § 1915 (for it is not § 1915 that imposes the filing fees). *Zehner v. Trigg*, 133 F.3d 459 (7th Cir.1997), rejects an argument that a different section of the PLRA is unconstitutional because it distinguishes between prisoners and other litigants. Section 1915(b)(1) and (2) is no more vulnerable on that account. *Jockisch*, 133 F.3d at 469 n. 7, observes that periodic collection from prisoners does not deprive prisoners of access to the courts—Lucien has had his day in court on this appeal—and we now cross the "t" by joining seven other circuits in holding that § 1915(b) as amended by the PLRA is within Congress' power under the Constitution. *Nicholas v. Tucker*, 114 F.3d 17 (2d Cir. 1997); *Roller v. Gunn*, 107 F.3d 227, 231–34 (4th Cir.1997); *Norton v. Dimazana*, 122

F.3d 286, 289–91 (5th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir.1997); *Lyon v. Krol,* 127 F.3d 763 (8th Cir.1997); *Shabazz v. Parsons,* 127 F.3d 1246, 1248–49 (10th Cir. 1997); *Mitchell v. Farcass,* 112 F.3d 1483, 1487–89 (11th Cir.1997).

One final issue requires attention. Lucien's request for return of the appellate fee led us to examine the record of payments and to discover that his prison has so far remitted only $19.08 in addition to the initial $14. The district court's order, tracking the statute, called for the prison to turn over 20% of each "preceding month's income credited to the prisoner's account" provided that the balance exceeds $10. The prison has not complied. Since the district court's order more than $856 has been credited to Lucien's prison trust account, and receipts in every month exceeded $10. Only 2.5% of the deposits have been paid to the district court. Had the prison sent 20%, the full $105 would have been collected already.

How has this come about, and what is to be done in response? The prison has not informed the district court how it calculates the amounts due, but an examination of the current statement of Lucien's trust account shows that the prison has remitted less than 20% of what Lucien received from prison employment.[†] This implies that the prison believes that only earned income is subject to the PLRA. Yet "income" is a more comprehensive term than "earned income." If Lucien were to write a book about his criminal career, the royalties would not be "earned income" but would most certainly be available to pay filing fees in his litigation. Congress did not define the term "income" in § 1915(b), but it used several related terms: "income," "deposits," and "amount in the account". These seem to be used as synonyms, which implies that "income" means "all deposits". A prison therefore "shall forward" (§ 1915(b)(2)) 20% of whatever sums enter a prison trust account, disregarding the source. That some receipts are gifts or bequests

from family members does not shelter them from § 1915(b)(2), as the prison seems to have supposed.

Because Lucien would have paid the full $105 fee already had the prison complied with the order, there must now be paid over to the district court all of Lucien's income (other than sums subject to other court orders) until the $105 has been paid in full. Section 1915(b)(2) says that "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." This language places on the prisoner a responsibility to remit at this rate—no greater, but no less either. A prisoner who fails to ensure that the required sum is remitted in one month must make it up later; the statute does not allow deferral past the time when application of the formula would have produced full payment. If in a given month the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly. That is one implication of *Robbins v. Switzer,* 104 F.3d 895 (7th Cir. 1997), which holds that, even after release, the former prisoner must prepay the sum that would have been collected had the payment specified by § 1915(b) been remitted before the release occurred. An erroneously small payment in a given month postpones collection of that month's installment, but it does not extend the time to complete payment.

Lurking in the background is the question whether the prison itself may be liable if it fails to comply with a judicial order under the PLRA. Resolution of that question could be difficult, and before addressing it in a future case (should it become necessary) we would invite briefs from the states of the circuit as *amici curiae.*

---

[†] By our calculation the institution has remitted only 14.5% of Lucien's income from prison employment. Some of his earnings were the result of a retroactive wage increase, and the prison erroneously disregarded this lump sum when calculating what Lucien owed to the court. But even if this disregard had been proper, things still would not come out right, for the prison remitted only 16.8% of Lucien's regular monthly wages. Because the amount entering the trust account exceeded $10 every month, the difference between this and 20% is inexplicable.

The judgment is affirmed, the motion for return of the appellate fees is denied, and all income to Lucien's trust account is to be remitted until the full appellate filing fee has been paid.