Algenone Keonta **WILLIAMS**,
Petitioner,

v.

Jon **LITSCHER**, Jan Mink and Christi Dietz, Respondents.

No. 00–C–451–C.

United States District Court,
W.D. Wisconsin.

Sept. 25, 2000.

Algenone K. Williams, Boscobel, WI, pro se.

### ORDER

CRABB, District Judge.

▇ Petitioner Algenone Williams, a prisoner at the Oshkosh Correctional Institution in Oshkosh, Wisconsin, has submitted a proposed civil action pursuant to 42 U.S.C. § 1983. He requests leave to proceed *in forma pauperis.* I have examined a certified copy of petitioner's trust fund account statement and reviewed this court's own financial records. I conclude that because petitioner is not paying the debt he incurred under the 1996 Prison Litigation Reform Act in connection with other lawsuits he filed in this district, he is not entitled to proceed *in forma pauperis* in this action.

On April 5, 1999, petitioner was granted leave to proceed *in forma pauperis* in *Williams v. Ball,* 98–C–823–C. In the order granting him leave to proceed, I noted that petitioner had paid an initial partial payment of $8.36, and that he was required to pay the unpaid balance of $141.64 in monthly installments in accordance with 28 U.S.C. § 1915(b)(2). Petitioner has not paid any part of the remainder of his filing fee in that case. In June 1999, petitioner filed a second lawsuit, *Williams v. Page,* 99–C–392–C. In the order granting him leave to proceed *in forma pauperis,* I noted that petitioner had paid an initial partial payment of the filing fee in the amount of $6.82 on July 8, 1999, and that he was to pay the remainder of the filing fee, $143.18, in monthly installments pursuant to § 1915(b)(2). Petitioner has not paid any part of the remainder of his filing fee in case # 99–C–392–C.

In December 1999, petitioner filed a third lawsuit, *Williams v. Hudson,* 99–C–806–C and requested leave to proceed *in forma pauperis.* In an order entered on December 23, 1999, I noted that petitioner had not paid any part of the filing fees he owed in his two prior cases except for the initial partial payments assessed to him. I

noted, also, that according to *Thurman v. Gramley,* 97 F.3d 185, 188 (7th Cir.1996), his failure to pay the fees in these cases for any reason other than destitution was to be understood as a relinquishment of his right to file future suits *in forma pauperis.* However, it appeared from petitioner's trust fund account statement for the previous six months that destitution might have been the reason for his failure to pay the amounts he owed. The statement showed that between January 1, 1999 and August 9, 1999, petitioner had had only three deposits made to his prison account (all three of which had been made before the time he was granted leave to proceed *in forma pauperis* in case nos. 98–C–823–C and 99–C–392–C) and that there had been no deposits made to petitioner's account after he filed his earlier lawsuits (or at least up until August 9, 1999). Thus, I advised petitioner that if he were to prove that his failure to pay installment payments in September, October, November and December 1999 (a period of time his trust fund account statement did not cover), as required by the Prison Litigation Reform Act was the result of his destitution and not because he was ignoring his financial obligations in this court, I would consider his request for leave to proceed *in forma pauperis.* Thereafter, petitioner submitted an updated trust fund account statement for the period beginning August 9, 1999 and ending December 22, 1999. The statement showed that petitioner had no deposits to his account during that time period. Therefore, his request for leave to proceed *in forma pauperis* in case no. 99–C–806 was granted on April 10, 2000. Petitioner was advised that although I found him to be destitute, he would have to pay installments of the $150 fee for filing case no. 99–C–806 at such time as any funds existed in his prison account.

In support of his request for leave to proceed *in forma pauperis* in this case, petitioner has filed a trust fund account statement covering the period between January 4, 1999 and May 2, 1999, and between May 4, 2000 and June 21, 2000.

Petitioner's account information from 1999 is irrelevant to a determination whether petitioner may proceed *in forma pauperis* in this case. Petitioner should have submitted a trust fund account statement for the period beginning January 1, 2000 and ending June 21, 2000.

In any event, the statement covering the period from May 4, 2000 to June 21, 2000 shows that petitioner is now on the payroll at the Supermax Correctional Institution, and that he received payments of $7.28 on May 22, 2000, $5.04 on June 5, 2000 and $5.60 on June 19, 2000. It shows also that on June 21, 2000, a Mary Williams sent petitioner $25 that was deposited into his account. Instead of paying any part of his legal debts in this court, petitioner is spending whatever money is deposited to his account on state loans for legal paper, photocopies and postage. In addition, he is paying a small amount of his income toward restitution.

█ 28 U.S.C. § 1915(b)(2) states:

After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

It is clear from the first sentence of this provision that Congress intended prisoners to make monthly payments on their filing fees calculated at 20% (or more, if the circumstances warrant) of the preceding month's income until the fee is paid. *See Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir.1998) (stating that "[a] prison 'shall forward' (§ 1915(b)(2)) 20% of whatever sums enter a prison trust account, disregarding the source). This amount rises to 40% of the preceding month's income if the prisoner has incurred two filing fees, and 60% if he has incurred three filing fees, and so on. *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir.1997). The only way the statute's payment requirement can be carried out is if prison officials capture 20% of the income to a prisoner's account each month so that it is available to send to the court at the appropriate time. The statute is unclear, however, as to what the appropriate time is for sending the court the requisite payments. Read literally, the second sentence of § 1915(b)(2) appears to direct prison officials to wait to send a check to the court until the balance of the prisoner's account exceeds $10. However, this cannot be what Congress intended.

Prisoners in Wisconsin, much like prisoners elsewhere, earn meager wages. From the numerous trust fund account statements filed in this court, I take judicial notice that prisoners with prison jobs in Wisconsin earn $.08 an hour. This means that a prisoner's pay for a 40–hour work week is $3.20 and a two-week paycheck amounts to $6.40. If prisoners spend their paychecks as they get them, the balance in their accounts will never exceed $10. Consequently, the court will not ever receive the statutorily required filing fees for prisoners proceeding *in forma pauperis*.

Another interpretation of the second sentence of the provision makes more sense and does not conflict with the intent of the Act. Under this second interpretation, instead of having prison officials track the precise moment the prisoner's account balance exceeds $10, the captured 20% deductions are accumulated in the account until they exceed $10, at which point the prison can write a check in whatever amount over $10 it has collected and send it to the court. This results in the payment of a prisoner's federal filing fees no matter how small the prisoner's paycheck is.

In this case, it is clear that petitioner is not making any effort to pay his debts to this court, no matter how prison officials are interpreting § 1915(b)(2). Petitioner's trust fund account statement shows that the full amount of his deposits is being spent on things other than his filing fees in this court. As I noted earlier, $7.28 was

deposited into petitioner's account in May 2000. However, as soon as that deposit was made, prison officials deducted $6.19 as payment toward petitioner's legal loans and transferred $1.09 into petitioner's release account, spending the full amount of the deposit. In June 2000, petitioner had deposits totaling $35.64. From this sum, prison officials credited petitioner's release account with $5.35, paid $10.22 toward petitioner's restitution obligation and took the remaining $20.07 as payment toward legal loans petitioner continued to rack up.

In *Lucien*, 141 F.3d 773, the Court of Appeals for the Seventh Circuit cautioned prisoner litigants to keep a watchful eye on their accounts and insure that amounts owed under the Prisoner Litigation Reform Act are withdrawn on a monthly basis. Also, as petitioner is already aware, nonpayment of obligations a prisoner incurs under the Prisoner Litigation Reform Act for any reason other than destitution is to be understood as a voluntary relinquishment of the prisoner's right to file future suits *in forma pauperis*, just as if the prisoner had a history of frivolous litigation. *See Thurman v. Gramley*, 97 F.3d 185, 188 (7th Cir.1996). Petitioner is not destitute. He has an income and as a result, an obligation under federal law to pay a portion of that income toward his federal court filing fees. That he and prison officials are choosing to spend his income for things other than his obligations under federal law does not render him destitute. Moreover, petitioner's new lawsuit does not show him to be "under imminent danger of serious physical injury" so as to exempt him from the ruling in *Thurman*. *See* § 1915(g).

Although the trust fund account statement petitioner submitted covers less than the full six-month period preceding the filing of this case, petitioner has owed since at least May of 2000, 60% of the deposits made to his account to pay the debt he incurred when he filed case nos. 98–C–823–C, 99–C–392–C and 99–C–806–C. This means that petitioner owes $4.36 from the deposit of $7.28 made to his account in May 2000, and $21.38 from the

$35.64 credited to his account between the 1st and 23rd of June 2000.

Because petitioner did not submit a full six-month trust fund account statement covering the period between January 2000 and May 4, 2000, it is not possible to determine how much he owes the court from deposits that may have been made to his account between January 1 and May 4 or from the time after June 23, 2000, when his trust fund account statement ends. The responsibility of calculating petitioner's payments belongs to petitioner and prison officials at the institutions in which he was confined during those months. *See Hall v. Stone*, 170 F.3d 706 (7th Cir.1999) (order under 28 U.S.C. § 1915(b) directs warden as trustee of account to disburse amounts owed in accordance with statutory directive). Therefore, the warden of the Supermax Correctional Institution in Boscobel, Wisconsin or his designee will have to figure the amount petitioner owes from January 1, 2000 until the present, and the warden will have to notify this court when petitioner's payments become current.

As soon as this court is notified that petitioner's payments for the filing fees in case nos. 98–C–823–C, 99–C–392–C and 99–C–806–C are up to date, petitioner may renew his request for leave to proceed *in forma pauperis* in this case. However, he should take note that he will have to support his request for leave to proceed in this case with a certified trust fund account statement for the full six-month period immediately preceding the filing of his renewed request.

## ORDER

IT IS ORDERED that petitioner's request for leave to proceed *in forma pauperis* is DENIED.

FURTHER, IT IS ORDERED that until petitioner has paid the amounts he is in arrears under § 1915(b)(2) in case nos. 98–C–823–C, 99–C–392–C and 99–C–806–C, he may not apply for leave to proceed *in forma pauperis* in any future action

except under the circumstances permitted under 28 U.S.C. § 1915(g).

Finally, IT IS ORDERED that the warden of the Supermax Correctional Institution or the warden of any other prison in which petitioner is confined at the time is to notify this court when petitioner's debts in case nos. 98–C–823–C, 99–C–392–C and 99–C–806–C become current.