In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3579

SHAUNTAE ROBERTSON,

*Plaintiff-Appellant,*

*v.*

GLENDAL FRENCH, LIEUTENANT, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14-cv-01272-CSB — **Colin S. Bruce**, *Judge.*

ARGUED SEPTEMBER 10, 2019 — DECIDED FEBRUARY 4, 2020

Before WOOD, *Chief Judge*, and KANNE and BRENNAN, *Circuit Judges*.

WOOD, *Chief Judge*. Hoping to find an effective way to curb frivolous lawsuits by prisoners, Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996. Central to the law is its requirement that a prisoner who cannot pay a federal court's filing fee at the time he files a case must pay the fee in installments out of his future income.

The PLRA painstakingly spells out the procedure for assessing and collecting those payments. When a prisoner who believes that he is eligible to proceed *in forma pauperis* (IFP) files his case, he must submit an affidavit to the court, 28 U.S.C. § 1915(a); his affidavit must provide a detailed account of all his assets, along with a copy of his prison trust-fund account statement. *Id.* Through the affidavit and account statement, the prisoner must be able to demonstrate that he does not have sufficient assets to pay the court's filing fee. *Id.* § 1915(a)(1). If the court is persuaded that the prisoner has met this burden, it so certifies. At that point, the PLRA requires the prison having custody over the prisoner to forward 20% of the income credited to the prisoner's trust account to the court each month (subject to a floor not pertinent here) until the full amount of the filing fee has been paid. *Id.* § 1915(b)(2). If at any time the court discovers that the prisoner's "allegation of poverty [was] untrue," the court must dismiss the case. *Id.* § 1915(e)(2)(A).

The case before us requires us to decide whether a prisoner must disclose an expectation of future income on an IFP application, and if so, whether a failure to do so automatically makes an allegation of poverty "untrue" for purposes of the PLRA, or if instead only deliberate misrepresentations have that effect. We conclude that the best reading of the statute requires only disclosure of assets that may currently be used to pay the filing fee, and in the alternative, even if expected payments should have been included, the affidavit is "untrue" only if the prisoner's statement was a deliberate misrepresentation.

**I**

Shauntae Robertson is a state prisoner at the Pontiac Correctional Center in Pontiac, Illinois. While he was incarcerated there, he alleges, the guards confined him in deplorable conditions. He says that he was isolated in a filthy cell, which was covered with urine and human feces and infested with insects and mice. Robertson further contends that the guards refused to give him his prescription medications and denied his repeated requests for supplies to clean the cell. After six days of confinement, Robertson attempted suicide. He received medical care and survived. Once he recovered, he brought an action under 42 U.S.C. § 1983 against the guards who allegedly had violated his constitutional rights.

Along with his complaint, Robertson submitted a motion for leave to proceed IFP. He furnished a handwritten affidavit in which he attested that he had no assets apart from $219.36 in his prison trust account and that he had no income apart from an occasional allowance from his mother. Because the filing fee at the time was $350, the court found that he was indigent and granted his motion to proceed IFP. After several years of pre-trial proceedings, the court denied the state's motion for summary judgment and set a date for a jury trial.

Eleven days before trial, the state moved to dismiss the case because it had just discovered that Robertson had not disclosed in his affidavit a $4,000 settlement agreement he had reached with the state. This was not a failure to disclose actual dollars; it was a failure to disclose the fact that the state had agreed to a future payment of $4,000 to resolve four earlier cases Robertson had filed. At the time Robertson filed his IFP affidavit, the settlement agreement had been finalized, but he had not yet received the money. It showed up in his prison

trust account some 12 months after he filed his IFP affidavit. The state's motion to dismiss came along three-and-a-half years after the affidavit. Robertson had neither disclosed the expectation of receiving that money, nor the actual receipt when it happened.

For reasons that are unclear on this record, there were bigger problems with Robertson's payments—problems not of Robertson's making. It seems that the prison neither sent along the initial filing fee nor any of the required later payments. (That initial fee should probably have been 20% of the $219 Robertson had, see § 1915(b)(1)(B), or approximately $44.) According to the district court's docket, once the court granted Robertson's IFP application, it entered the usual order directing the prison to pay the initial filing fee out of the income in Robertson's trust account. The court directed the court clerk to mail a copy of that order to the Trust Fund Office of the Pontiac Correctional Center. Somehow that does not seem to have happened. In their motion to dismiss, the defendants submitted a declaration from Kimberly Verdun, an employee in the Trust Fund Office, who stated that she had performed a "diligent search" but "could not locate find [*sic*] any record that the Illinois Department of Corrections was served with the Court's July 14, 2014 Order."

After the state brought the settlement to the court's attention, the court dismissed Robertson's case with prejudice. It concluded that "[t]he failure of a prisoner proceeding IFP to disclose subsequently received income has been viewed as a fraud upon the court."

**II**

This case presents several questions about a prisoner's duty to inform a court about assets he does not yet possess at the time he files his application to proceed IFP. In addition, we consider whether a prisoner has a continuing obligation to update the court about income he later receives if that income is deposited in his prison trust account. (We do not address new income that is held outside the prison; that situation is materially different, for purposes of the PLRA, from the one in which the prison itself knows exactly how much money the prisoner has in his trust fund at any given time. No one alleges that Robertson had any such outside income or assets.)

A

As we noted, the PLRA requires a prisoner applying to proceed IFP to disclose all his assets to the court. 28 U.S.C. § 1915(a)(1). To facilitate that process, all of the nation's district courts provide IFP application forms that are designed to guide that disclosure. Because the PLRA stipulates that a court must dismiss an IFP plaintiff's case whenever it discovers that the plaintiff's claim of poverty was untrue, a misrepresentation on an IFP application form is enough to support dismissal of the case.

Turning to our first question—whether income or assets expected in the future must be disclosed—we begin by looking at the language of the statute. There we find the present tense: the prisoner must furnish "a statement of all assets such prisoner possesses." *Id.* § 1915(a)(1). In addition, to ensure that this snapshot of present assets is an accurate reflection of the prisoner's financial situation, the PLRA calls for a six-month look-back. The prisoner must submit a "certified copy

of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint." *Id.* § 1915(a)(2). Although one could imagine statutory language that also requires information about anticipated future receipts, the PLRA is silent on that point.

Bearing in mind the fact that many people filling out IFP applications are unsophisticated, we think that this is a time to stick with the literal language of the Act. Even though an agreement to pay an amount in settlement of a case is a contract, it is not the same as cash in hand. At the time he filled out his initial affidavit, Robertson did not "possess" the $4,000 in any sense relevant for the PLRA. He could not use that money to pay the court's filing fee, because he did not yet have it. And it is highly unrealistic to think that someone in Robertson's position could treat that contract the same way a business might treat accounts receivable, which can serve as collateral for a loan. As a practical matter, Robertson had no ability to convert his settlement award into cash. The PLRA requires the affidavit in order to establish whether the prisoner-plaintiff is able to pay the filing fee at the time he begins litigation. Robertson had no ability to use his anticipated settlement for that purpose, and so the award was not relevant to whether he could proceed IFP.

Although neither party suggested that we look to other laws for guidance, we note that such an inquiry reveals that each statute takes its own approach to the treatment of income that has yet to be received. Under the bankruptcy laws, for instance, debtors are expressly required to disclose "any reasonably anticipated increase in income … over the 12-month period following the date of filing the petition." 11 U.S.C.

§ 521(a). See also Official Form 106A/B, Schedule A/B: Property (requesting disclosure of "money or property owed to you"). In contrast, cash-basis taxpayers must include in their reported gross income only "items of income you actually or constructively received during the tax year," I.R.S. Pub. 538 (Jan. 2019), and it defines constructive receipt to include only income that "is credited to your account or made available to you without restriction." *Id.* The PLRA contains nothing like the command in bankruptcy law to include future expected income. Moreover, since it is designed to inform the court both about the person's indigence and about the proper amount of the initial payment, it makes sense to look at actual income.

If, contrary to our conclusion, the PLRA should be construed to require the disclosure of future income, then Robertson erred by failing to disclose his anticipated $4,000 payment. But that would not be the end of the matter. We would then need to decide whether his omission made his affidavit of poverty "untrue" within the meaning of Section 1915(e)(2)(A). The answer would depend on what the word "untrue" means. It could cover only a deliberate lie, or it might sweep in an inaccuracy that was the product of confusion or misunderstanding. We review a district court's finding that a plaintiff lied on an IFP application for clear error. *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2002).

The PLRA does not define the word "untrue," but the fact that the penalty for an "untrue" allegation of poverty is not simply an order requiring full payment, but instead is dismissal of the entire action, suggests to us that Congress meant something like "dishonest" or "false," rather than simply

"inaccurate." We have so understood the term in the past. See, *e.g., Kennedy v. Huibregtse,* 831 F.3d 441, 442 (7th Cir. 2016) (deliberate failure to disclose $1400 in trust account outside the prison); *Thomas,* 288 F.3d at 306 (deliberate misrepresentation about expected ERISA distribution); *Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 547 (7th Cir. 1998) (knowing provision of inaccurate information). Other circuits also understand it this way. See, *e.g., Nottingham v. Warden, Bill Clements Unit,* 837 F.3d 438, 441 (5th Cir. 2016) (initial IFP application contained misrepresentations); *Romesburg v. Trickey,* 908 F.2d 258, 259 (8th Cir. 1990) (intentional misrepresentation in affidavit). For the sake of completeness, we examine whether Robertson's failure to disclose the expected payment was a deliberate attempt to conceal relevant information from the court.

The record evidence indicates that Robertson was not trying to conceal anything. First, he did not fill out the form himself; because (as he alleges) he can neither read nor write, he relied on another prisoner to fill out his affidavit for him. This prisoner apparently relied upon the short form IFP application that the Central District of Illinois makes available. The short form requires that the applicant list "[a]ny automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own." Robertson did not at that time have $4,000, and at the rate some states pay their bills, he had no idea when he would ever see it. There is no reason to assume that a prisoner of limited financial literacy understands that assets he has not yet received qualify as assets he "owns." Additionally, in previous IFP cases Robertson had filed, he used the short form and disclosed settlement funds he already had received. The fact that Robertson had disclosed received settlement monies in the past further suggests that he did not intentionally mislead the

court about his financial circumstances here. On the basis of this record, we conclude that the district court clearly erred in concluding that Robertson engaged in an intentional misrepresentation.

The state contends that Robertson must have known that the settlement agreement was itself a "thing of value" and thus that his failure to disclose it was a deliberate lie. But that argument would be correct only if the PLRA follows the bankruptcy model, rather than the cash-taxpayer model, and we have concluded that it does not. Even under the bankruptcy laws, a debtor who makes a good faith omission on her petition may turn her claim over to the bankruptcy trustee. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357 (7th Cir. 2015). The state also faults Robertson for failing to use the long form IFP application, which requires a plaintiff to identify "every person, business, or organization owing you … money, and the amount owed." But the PLRA does not require the use of the long form, and Robertson is not responsible for any discrepancies between the short and long forms.

To recap, our primary conclusion is that the PLRA calls only for disclosure of current income that can be used to defray the filing costs. Any further income that is deposited in the prison trust account will automatically be available to the custodian for later installment payments under section 1915(b)(2), and so no evasion is possible. While a prisoner may incur additional disclosure obligations by using something akin to the Central District's long form IFP application, the statute itself does not require the disclosure of future income. In the alternative, we conclude that dismissal is proper only if the prisoner deliberately misrepresents his assets. At this juncture, it does not appear that Robertson did so.

B

If we are correct in holding that the PLRA does not require immediate disclosure of expected future payments, we must also reach the question whether it imposes a continuing obligation on a prisoner proceeding IFP to update the court about changes in his financial condition. As long as any such new assets are deposited in the prisoner's institutional trust account, we conclude that the act of deposit is enough disclosure to satisfy the statute. Although we do not need to address what might happen if the assets were held outside the institution, we freely acknowledge that this would present a materially different problem.

Here, the district court concluded that the "failure of a prisoner proceeding IFP to disclose subsequently received income has been viewed as a fraud upon the court." The court relied upon our decision in *Thomas v. General Motors Acceptance Corp.*, *supra*, but that case is distinguishable. It did not involve a prisoner, and it did involve a deliberate, material lie on an IFP application. The IFP form Thomas used expressly required him to disclose any assets he was expecting to receive. He failed to reveal that just nine days earlier he had directed his former employer to distribute $73,714 to him from his retirement account. 288 F.3 at 306. We have no quarrel with that holding, but it sheds little light on the question whether the deposit of new funds into a prison account can suffice to prove disclosure.

The system established by the PLRA envisions that after the prisoner-plaintiff's initial IFP affidavit, the prison administrator will pay the filing fee in increments out of the prisoner's trust fund. 28 U.S.C. § 1915(b)(2). These monthly payments are not the responsibility of the prisoner. The custodial

agency simply calculates the monthly payment due—20% of any income received the previous month—and forwards payment to the appropriate clerk of court each time that amount exceeds $10, until the full filing fee is paid. *Id.*

We grant that in Robertson's case, this procedure broke down. Though it is not clear whether the court or the prison made the error, no one says that Robertson did. Indeed, the Trust Fund Office at Pontiac never forwarded *any* payment to the court, either initial or later, in clear violation of the statute. If this lapse had not occurred, then the moment Robertson's $4,000 in settlement funds landed in his account, the Pontiac authorities would have forwarded whatever remained of the balance of Robertson's filing fee—substantially less than the $800 representing 20% of the new income—to the court. Robertson should not lose the right to pursue his case because of someone else's mistake.

The state insists that, despite the PLRA's procedures, the prisoner still bears the burden of ensuring payment of the filing fee. It relies primarily on our decision in *Lucien v. DeTella*, 141 F.3d 773 (7th Cir. 1998). In *Lucien*, a prison failed to remit the monthly 20% of a prisoner's income, and in the meantime, the prisoner spent a good deal of the balance of his trust account. We held that, in light of his own role in depleting the account, the prisoner had to pay all of his income to the court until the filing fee was satisfied, even if the payments exceeded 20% of his monthly account balance. *Id*. at 776. We reasoned that he should have watched his account more carefully and should have "refrain[ed] from spending the funds on personal items until they [could] be applied properly." *Id.* But *Lucien* concerned only continued liability for the fee, not the right to litigate a case at all. Moreover, *Lucien* said nothing

about a prisoner's duty to update the court when new income is deposited into his prison account. It held only that he should watch his expenditures when he is already liable for a filing fee.

Nothing in this opinion abrogates our earlier decisions holding that a court has the power to monitor a prisoner's financial situation in order to ensure that the prisoner does not deplete his trust account in order to avoid paying the filing fee. See *Sultan v. Fenoglio*, 775 F.3d 888, 891 (7th Cir. 2015) ("Our view would be different if there were evidence that Sultan was intentionally depleting his trust account to avoid paying his filing fee. If that were happening, the district court would be entitled to deny *in forma pauperis* status." (citation omitted)). While a court may maintain this oversight role to prevent a prisoner from evading his obligation to pay, the prisoner's obligation to disclose is satisfied once he makes a truthful statement of his financial condition at the time of filing.

We stress again that we have no comment on any ongoing duty to disclose assets received outside of his prison trust account—assets that are not automatically disclosed by virtue of their deposit in the prison's own account. See *Kennedy v. Huibregtse*, *supra* (holding that dismissal under the PLRA was appropriate when a prisoner failed to disclose that he held $1400 in a trust account outside the prison). We address only assets that are promptly placed in the inmate's prison trust fund.

## III

The critical question under the PLRA is the prisoner-litigant's financial position at the time he files his complaint.

Robertson truthfully disclosed all funds to which he had access at the time he filed his IFP application. Moreover, taking the current record in the light most favorable to Robertson, any failure to disclose the expected $4,000 was at best inadvertent, which is not enough to make it "untrue." Finally, with respect to funds that are deposited into the prison trust account, we are satisfied that this deposit is, in itself, adequate disclosure to the prison authorities of changes in the prisoner's income. We thus conclude that the district court should not have dismissed Robertson's case for an "untrue" allegation of poverty. We REVERSE the judgment of the district court and REMAND this case for further proceedings consistent with this opinion.