**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 10, 2020[*]
Decided November 19, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1635

| | |
|---|---|
| MICHAEL T. HUGHES,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 C 6139 |
| KIM ANDERSON, et al.,<br>    *Defendants-Appellees*. | Virginia M. Kendall,<br>*Judge*. |

**O R D E R**

Michael Hughes, a pretrial detainee at the Cook County Jail, sued jail officials for deliberate indifference and proceeded in forma pauperis. *See* 28 U.S.C. § 1915(a). Defendants in another of Hughes's suits (he had at least eight pending) moved to dismiss, arguing that he was depositing his money into other inmates' accounts to avoid paying the filing fees. They relied on recordings of phone calls with his brother where Hughes stated that "this is the way to get around [the fees]." The district court agreed and dismissed Hughes's suits with prejudice, finding a fraud on the court.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Because the judge properly considered the recorded jail calls as evidence and permissibly ruled that Hughes's conduct was intentional and egregious, we affirm.

Hughes sued jail officials in 2018 for ignoring his repeated complaints of rectal bleeding and pain, a condition that ultimately led to the removal of his colon. After the judge denied his first application to proceed without prepaying the filing fee (in it Hughes omitted $1,600 in gifts that he recently received), she granted his second application. The judge warned him, though, that she would "not tolerate false or misleading statements" in the future and that such conduct may result in sanctions, including dismissal of his suit. The judge reminded Hughes that because she had also granted him leave to proceed without prepaying fees in five other pending cases, 100% of the balance of his inmate trust fund account exceeding $10 (20% for each case) would be deducted until his filing fees were fully paid. *See id.* § 1915(b)(2); *see also Bruce v. Samuels*, 577 U.S. 82, 85 (2016). Hughes later asked the court for an accounting of his unpaid filing fees, revealing that he owed almost $4,000.

In a separate suit where Hughes alleged other civil-rights violations by jail officials, the defendants moved to dismiss, arguing that he had defrauded the court in two ways. First, Hughes had omitted from his IFP application $500 in gifts that he had recently received. Second, he had instructed his brother, who typically deposited money into Hughes's account, to deposit $134 (in two transactions) to other inmates' accounts for his personal use in order to avoid paying the outstanding filing fees. In support the defendants attached documents reflecting his brother's deposit activity, including those into Hughes's cellmates' accounts, and recordings of two phone calls with his brother. The calls appear to confirm his scheme to avoid filing fees:

- He had $9,000 in fees from "put[ting] the lawsuits in" and was "waiting for the settlement to pay [those] off."

- "But for right now, this is the way to get around it."

- But "I don't talk about that, because [jail officials] record these conversations … . They take these conversations and give it to the judge."

The judge ordered Hughes to explain why, in light of this evidence suggesting that he was diverting funds to avoid his debts, the court should not dismiss *all* his cases with prejudice. Hughes argued that although he directed funds to other inmates' accounts, he did so to remain eligible for a jail program that provided him with free hygiene products, not to defraud the court. He explained that the jail based his

eligibility for that program on his incoming deposits, not on the balance of his account after deductions for his debts.

The judge dismissed Hughes's eight pending suits with prejudice, finding that he had defrauded the court in its effort to collect the filing fees. The judge reasoned that Hughes "undoubtedly" wanted to "thwart" collection of the filing fees because "he *said so*" to his brother on the call. And, the judge noted, the regular and frequent deposits to his account had suspiciously ceased. In the almost four years since Hughes entered the jail, up until the month before he asked the court about his unpaid filing fees, he had received 74 deposits totaling over $3,700, most of which came from the same sources, including his brother. Shortly after he received an accounting of the debts he owed to the court, however, Hughes had only one deposit to his account in the amount of $10. So there was reason to be concerned that Hughes was structuring transactions to avoid paying the filing fees. Given the gravity of Hughes's misconduct, dismissal with prejudice was appropriate. He had defrauded *two* public institutions (the court and jail). The judge stated that dismissal without prejudice and permitting him to refile would amount to no real sanction. She wanted to send a "firm message" about the need to remain truthful throughout the litigation process.

On appeal Hughes insists that he did not mean to defraud the court. He meant only to remain eligible for the jail's hygiene-product program, and he never lied to the court in his IFP affidavit or failed to disclose any of his finances.

The judge did not clearly err in rejecting this defense and finding that Hughes intentionally concealed assets to defraud the court. *See Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2002) (describing the standard of review). First, it is irrelevant that Hughes may not have lied on his IFP affidavit. Courts can, in an oversight role, monitor a prisoner's finances "to ensure that the prisoner does not deplete his trust account in order to avoid paying the filing fee." *Robertson v. French*, 949 F.3d 347, 353–54 (7th Cir. 2020); *see also Sultan v. Fenoglio*, 775 F.3d 888, 891 (7th Cir. 2015). Second, the judge permissibly found that Hughes was brazenly depleting his assets to avoid paying his debts to the court. Hughes stated on a call (a recording he knew a judge may receive) that he wanted his brother to deposit his money into other inmates' accounts. And far from saying, as he now claims, that this scheme would help him remain eligible for a jail program, he admitted that diverting his assets was the way to "get around" the "fees" he owed from "put[ting] the lawsuits in." Finally, even if he diverted assets only to defraud the jail and not the court, Hughes should have told that to the court before hiding the assets so it could evaluate the legitimacy of the scheme.

*See Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) ("[H]iding assets is not a permissible alternative to seeking the judge's assistance. An [IFP] applicant has to tell the truth, then argue to the judge why seemingly adverse facts … are not dispositive.").

Next, Hughes argues that even if some sanction was appropriate, the judge should not have punished him with dismissal with prejudice. He contends that he diverted only $134 and that he offered (in a motion for relief from the judgment) to raise money to pay some of the filing fees. It is "beyond question" that a court may dismiss a case with prejudice as a sanction in an appropriate case. *Thomas*, 288 F.3d at 306. Before doing so, however, a judge should "generally consider" lesser sanctions first. *Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011). Here, the judge did just that, noting that dismissal with prejudice was "proportionate to the gravity" of Hughes's deliberate concealment of assets. First, she had warned Hughes not to hide assets, to no avail. Second, even though Hughes was caught on tape discussing hiding less than $200, the judge reasonably found that Hughes was scheming for more diversions because he had asked about his outstanding debts and altered his longtime deposit patterns to avoid paying them. Third, the judge also considered dismissal without prejudice but noted that it would be too lenient considering the "numerous deeply troubling aspects of [Hughes's] conduct." Accepting an asset-concealer's belated offer to pay his debts would not deter others from trying to get away with a similar fraud.

Finally, Hughes raises two procedural matters. First, he argues that the judge should not have considered the phone calls without permitting him to contest the recordings' authenticity. He cites *Diamond v. Pitchess*, 411 F.2d 565, 566–67 (9th Cir. 1969), where a district court sua sponte dismissed a suit as frivolous, relying on its in-camera review of government reports. Unlike *Diamond*, the court here dismissed Hughes's suit not as frivolous but as a sanction for fraud and only after giving him notice of the possible sanction and a chance to respond. That process was sufficient. *See Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Next, Hughes claims that the recordings were not exchanged with him. However, he does not challenge the defendants' reliance on the certificate of service showing that copies of the recordings were mailed to the jail well before his brief was due. He otherwise fails to develop his argument, so it is waived. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020).

We considered Hughes's other arguments, and none has merit.

AFFIRMED