NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 10, 2022[*]
Decided April 29, 2022

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

Nos. 21-2012 & 21-2119

| | |
|---|---|
| LOGAN DYJAK, | Appeals from the United States District |
|     *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
|     *v.* | No. 3:20-cv-03159 |
| | |
| DANA WILKERSON, et al., | Joe Billy McDade, |
|     *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Logan Dyjak alleges various constitutional violations at McFarland Mental Health Center in Springfield, Illinois, where Dyjak has been detained since criminal

---

[*] The appellees were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

proceedings against them[1] on homicide charges resulted in a finding of not guilty by reason of mental disease or defect. Because at some point Dyjak had $1800 in their institutional account (from economic stimulus disbursements), the district court denied Dyjak's motion for leave to proceed in forma pauperis ("IFP"), as well as Dyjak's motion for reconsideration. Dyjak appeals. Because the district court considered only Dyjak's assets, instead of looking at the complete picture of assets and liabilities, we vacate the decision and remand.

## I

Dyjak filed a complaint under 42 U.S.C. § 1983 alleging that staff members at McFarland violated Dyjak's due-process and First Amendment rights by retaliating against them for advocating for better conditions for detainees. During the district-court proceedings, Dyjak filed multiple IFP applications. Dyjak filed the original complaint, a motion to recruit counsel, and an IFP motion on June 22, 2020. At that time Dyjak represented that they had received no money in the past 12 months, had $3.45 in cash, and had no liabilities. Records requested by the court confirmed that Dyjak did not have a trust account at McFarland in the six months preceding their IFP application.

The district court screened Dyjak's complaint and dismissed it without prejudice for failure to state a claim. See 28 U.S.C. § 1915(e)(2). The court also denied the motions for IFP status and recruitment of counsel, with leave to renew the requests after amending the complaint. The court therefore did not address Dyjak's financial status.

Dyjak filed an amended complaint and a new IFP application in December. Dyjak stated that they had $1.62 in cash and had received a check for $1200 in economic stimulus funds. As of the time of the response, Dyjak reported, they did not know what

---

[1] Dyjak uses they/them/their pronouns in the briefs and motions in this case, and we have followed suit. We note in this connection that, despite the potential for some confusion about the singular and the plural, this usage of "they/them/their" has now been accepted by numerous style guides and dictionaries as appropriate in referring to a singular person of unknown or non-binary gender. See, *e.g.*, MLA Handbook § 3.5 (9th ed. 2021); APA Publication Manual § 4.18 (7th ed. 2020); The Associated Press Stylebook, *they, them, their* (55th ed. 2020); Farhad Manjoo, Opinion, *It's Time for 'They'*, N.Y. TIMES (July 10, 2019), https://www.nytimes.com/2019/07/10/opinion/pronoun-they-gender.html (noting the Times stylebook allows the usage); The Chicago Manual of Style ¶ 5.48 (17th ed. 2017). We see no reason to break with that emerging consensus, in light of our normal practice of using the pronouns adopted by the person before us, *e.g.*, *Balsewicz v. Pawlyk*, 963 F.3d 650 (7th Cir. 2020) (using "she" for a transgender woman when that is the person's preference), as well as the Supreme Court's decision to do so in *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020).

to do with the check. Dyjak also listed a $5,000 debt to a friend, Madeline Bauer, who apparently was handling some of Dyjak's affairs.

Before the district court reviewed the new IFP application, Dyjak's financial situation evolved. Dyjak opened a trust account, deposited the $1200 stimulus check, and then wrote a check to Bauer in that amount. Days later, Dyjak deposited another economic stimulus check, for $600, and again transferred it to Bauer immediately. The district court had not yet ruled on the pending IFP application, and so Dyjak filed another application on March 15, 2021, after different judges dismissed other cases in which Dyjak had applied for IFP status because of how Dyjak had handled the economic stimulus funds. In this latest application, Dyjak openly acknowledged the additional $600 in economic stimulus (totaling $1800) and listed as liabilities the current and potential costs of various court cases. Dyjak explained that they believed that court fees would be automatically sent from their trust account to the affected courts.

Because that had not happened (at least yet), Dyjak assumed that the stimulus money did not alter their fee schedule and was available for partial repayment to Bauer. Dyjak explained that Bauer had paid for their clothing (which Dyjak says is not provided by their institution), cosmetics, and food. (In another suit, Dyjak alleges that McFarland provides insufficient food.) Because of the dismissal sanctions in Dyjak's other cases, Dyjak had requested that Bauer return the $1800, but Bauer did not return enough to pay all the outstanding filing fees.

The district court denied Dyjak's IFP motions, explaining briefly that, based on information from another case, Dyjak had $1800 during "a relevant 11-day period." The court stated that the case would be dismissed without prejudice if Dyjak failed to pay the filing fee within 21 days. Dyjak appealed that decision and, on the same day, moved for reconsideration, arguing that they had fully disclosed their finances but no action had been taken by the courts to use the stimulus funds to satisfy filing fees. Dyjak added that they now had only $392 in their trust account and $1.62 in cash, and so they could not afford the full filing fee up front.

The district court denied the motion to reconsider on the ground that Dyjak had rendered the funds in their account "inaccessible." The court did not, however, find any willful or deceitful avoidance of the fee or misrepresentation to the court on Dyjak's part. Dyjak then filed a second notice of appeal. Two weeks later, the district court dismissed Dyjak's complaint for failure to pay the filing fee.

## II

We begin by addressing the scope of review. The denial of an IFP motion is independently and immediately appealable. *Turley v. Gaetz*, 625 F.3d 1005, 1007 n.3 (7th Cir. 2010). Dyjak filed timely notices of appeal after the second denial of IFP status and after the denial of the motion to reconsider. See FED. R. APP. P. 4(a)(1)(A). We have consolidated those appeals for decision. We review both the denial of the IFP applications and the denial of the motion to reconsider that decision for abuse of discretion. *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (motion to reconsider); *McWilliams v. Cook County*, 845 F.3d 244, 246 (7th Cir. 2017) (IFP application). Dyjak did not file a notice of appeal after the dismissal, see FED. R. APP. P. 3(a)(1), and so that decision is not under review.

Dyjak primarily contends that the district court lacked good reasons for denying Dyjak's IFP applications. To obtain IFP status, the applicant need not be "absolutely destitute"; the person must only be unable to pay court fees while providing for their necessities. *Adkins v. E.I. DuPont de Nemours*, 335 U.S. 331, 339 (1948). No specific amount of income or cash on hand warrants or precludes IFP status; instead, courts have broad discretion to consider an applicant's income, as well as the demands on that income. See *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016).

Dyjak argues that the district court wrongly penalized them using the economic stimulus money—received long after they filed suit—to pay off a debt at a time when they were granted, or still seeking, IFP status in various court cases. Dyjak contends that it was reasonable for them to have used the stimulus money to pay Bauer after they disclosed the stimulus funds to the court, because they had been told that court payments would be automatically withdrawn from the trust account when due.

We agree with Dyjak that the district court did not provide clear reasoning for denying the IFP applications. Initially, the district court said only that Dyjak had "disbursed" funds. It is thus unclear if the problem was that Dyjak used their money partially to pay a debt instead of the filing fee, or that having $1800 (but no income) precluded IFP status. Possession of $1800, for a civilly detained person for whom at least some necessities are provided by the institution, in some circumstances *may* be sufficient reason to deny an IFP motion. See *Kennedy*, 831 F.3d at 443. But the district court did not account for Dyjak's debts to the court system and to Bauer. A court may abuse its discretion "when it overlooks essential evidence or fails to consider relevant factors." *James v. Eli*, 889 F.3d 320, 329 (7th Cir. 2018) (quotations and citation omitted). An applicant's financial obligations are necessary considerations for a court, see *Adkins*, 335 U.S. at 339, but we do not know how the district court viewed Dyjak's debts

because it discussed only Dyjak's assets. In so doing, the court relied on trust account information from a different case and did not acknowledge the additional information in Dyjak's motions. Perhaps the district court believed that the filing fee in this case took precedence over the fees owed in other court cases or the personal debt, but we can only speculate given the absence of explanation.

Dyjak also argues that it was error to deny IFP status because Dyjak did not misrepresent their finances. But the premise of this argument—that the district court denied the application because of a misrepresentation—is not established. When an applicant's allegation of poverty is untrue, courts must *dismiss* the case, not require payment. 28 U.S.C. § 1915(e)(2)(A); see *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002). And dismissal is proper only if the applicant's statements were deliberate misrepresentations. See *Robertson v. French*, 949 F.3d 347, 352 (7th Cir. 2020). Here, the district court noted that Dyjak could not expect the courts to deduct funds they had rendered inaccessible, but it did not make a finding that a misrepresentation or other misconduct had occurred, or if so, if it warranted a sanction. Indeed, it is hard to see how the court could have done so, in light of Dyjak's prompt disclosure of both stimulus payments. Nor did the court clarify Dyjak's obvious confusion about when, and in what amount, the courts would obtain fees from the trust account.

Because the district court did not consider Dyjak's liabilities along with Dyjak's assets, and did not explain whether it found wrongdoing, or simply that temporary possession of $1800 precluded IFP status, we VACATE the decision and REMAND for further proceedings.